[Civ. No. 15299.   Second Dist., Div. Three.   Apr. 11, 1947.]

FRANK GRAF, a Minor, et al., Respondents, v. GEORGE J. HARVEY et al., Appellants.

Eugene S. Ives for Appellants.

Kenneth Sperry for Respondents.

SHINN, Acting P. J.—This is an appeal by defendants George J. Harvey, Cora E. Harvey, Jack Harvey, John H. Stockwell, Sr., and Philip C. Stockwell from an order granting plaintiff's motion for a new trial after verdict and judgment in favor of defendants. Plaintiff Frank Graf, a minor aged five years, was injured March 13, 1944, the claim being made in his behalf that as he was walking in a southerly direction along the westerly sidewalk of Orange Avenue, Long Beach, an automobile was driven southerly on Orange Avenue, and as it was pulled in close to the curb, and before stopped, the right-hand door of the car was opened in such manner that the handle came in contact with the middle of plaintiff's forehead. John H. Stockwell, Jr. was the registered owner of the car; he was overseas in the armed forces and his father, John H. Stockwell, Sr. had custody of the car. Philip C. Stockwell, another son, who was a minor, had been given permission by his father to use the car, upon the condition that it would be driven by Jack Harvey, also a minor, 18 years of age; Jack was driving the car at the time of the accident and Philip was riding with him. The Harvey boy held an operator's license which had been issued to him upon the written agreement of his parents, defendants herein, assuming liability for injuries suffered by their son in the operation of automobiles. Philip did not have an operator's license. Jack Harvey and Philip Stockwell were jointly charged with negligence in the operation of the car. The case has been tried twice. The first trial resulted in a judgment for plaintiff, and a new trial was granted. At the second trial the verdict and judgment were in favor of defendants, and a new trial was granted for insufficiency of the evidence.

On the day of the accident, Philip Stockwell, who was inconvenienced by a case of snow blindness, drove to the Harvey residence, where he picked up Jack Harvey. The two started about 8 o'clock in the morning, drove to Compton to see a cousin of young Stockwell, and remained there until about 2 o'clock, when they returned to Long Beach. The Harvey boy had often driven the car before and had driven young Stockwell to school, sometimes in his own car, sometimes in the Stockwell car. There was a drug store at the northwest corner of 10th and Orange Avenue. North of the drug store building was a driveway, and the car was being pulled to the curb just south of the driveway. There was much uncertainty in

the evidence as to where plaintiff was when he was struck and how he came to be struck. Plaintiff relies largely on circumstantial evidence to prove that he was on the sidewalk at the time he was struck. Defendants also rely upon circumstantial evidence and certain direct testimony that plaintiff was in the street at the time he was struck. As we shall see, this controverted point was not a decisive one. Plaintiff's mother testified that Frank attended a school located at north of 10th Street on the west side of Orange. On returning from school he would travel south on the west side of Orange to 10th, where he would cross to the east side of Orange and proceed south toward his home. The witness had been to town and had returned on a bus, alighting at the southwest corner of 10th and Orange; she crossed to the east side and started south on Orange, when she remembered it was about time for plaintiff to return from school. She saw him coming south on the west side of Orange at about the second house north of the drug store. He was walking on the sidewalk with a group of small children. The boy passed out of her sight momentarily behind a car or a palm tree and then she heard him scream and hurried to him. The boy was then on the sidewalk near the door of the drug store and about two feet from the building. Two women were with him, also the Stockwell and Harvey boys, whose automobile had been pulled up to the curb about opposite where plaintiff was standing. The mother asked what had happened and one of the women said the little boy had been struck by a car door; she pointed to the two boys and they said nothing. At Mrs. Graf's request, Jack Harvey drove her and the boy to a physician's office. On the way, Jack stated that as the car was coming to a stop at the drug store his pal opened the door while the car was still in motion and the door struck the boy; that the car was not going fast. In the doctor's office the mother repeated the statements of Jack Harvey, and the latter, being present, said nothing. John J. Donegan, who carried the boy up into the doctor's office, was present when Mrs. Graf recounted what the Harvey boy had said, and testified that the latter was present while Mrs. Graf spoke and made no reply. The mother testified that she had not seen the boy leave the sidewalk at any time. A police officer who examined the location shortly after the accident found blood on the sidewalk, looked in the street for blood and found none.

The Stockwell boy testified that the lock of the door of the Ford car was released by pressing down on the end of the

handle toward the front of the car; that after the accident the handle was bent down or sagged a trifle and that he noticed some hair on the sharp point of the door handle; that he did not see the boy before he was struck but first saw him in the driveway and saw him run up some 30 or 40 feet to where the two women were standing. The first he knew of the accident was when he heard a "thump." He was starting to open the door before the car stopped. He saw something brown go by, started to open the door and when it was opened saw the boy in the driveway. There was another car parked just north of the driveway. He also testified that the right door lever on the inside of the car was missing, had been for several months, and that it was necessary to open the door with the outside handle. Another witness testified to the same effect. Mrs. Graf testified that she recalled definitely that when Jack Harvey drove her and the boy to the doctor's office there was a handle on the inside of the door; that she opened the door with this handle and not with the handle on the outside of the door.

One Holmes, a witness for the defendants, testified that he resided on the west side of Orange Avenue opposite the scene of the accident; that he was in his front room, heard screams, looked through the glass pane in the door and saw a small boy coming out of the street, and at that time directly in front of a car that was parked at the curb, and that the boy was then about six feet from the curb; that he saw the little boy run north on the sidewalk toward some other children and later pass to the south. He also testified that he did not see the automobile that was driven by defendant Jack Harvey and that he did not see whether the little boy was bleeding. Defendants introduced evidence that the height of plaintiff was 44 inches, that the wound on his forehead was 42 inches above the ground when he was standing erect, that the door handle was 37½ inches above the ground, and the sidewalk 11 inches above the level of the street. From these facts it is deduced that "if the child had been standing on the sidewalk, that the position of his head where the blow occurred would have been at least 15½ inches above the level of the door handle." The Stockwell and Harvey boys both testified that they were familiar with the locality, knew of the presence of the school, and saw no children on the sidewalk. The Harvey boy testified that he did not look for children and at the time of the accident was looking straight ahead.

■ The question of the sufficiency of the evidence to establish negligence is argued separately in behalf of defendants Harvey and defendants Stockwell. In contending that there was no evidence of negligence on the part of Jack Harvey, defendants insist that plaintiff must have been in the street, for the reason that if he had been on the sidewalk and standing erect, the door handle would have been 15½ inches below the level of the wound in his forehead. The same argument could have been carried further; if plaintiff had been in the street, and standing erect, the door handle would have been 4½ inches below the level of his forehead. But the fact remains that the door handle struck his forehead. No witness saw him at the time he was struck, and the physical facts are not conclusive as to where he was, nor as to his posture, at that time. But, although it was plaintiff's contention that he was on the sidewalk, his cause of action did not depend upon proof of that fact. If he was in the street, that fact would not of itself acquit Jack Harvey of the charge of negligence. There was ample evidence to support a finding that he was negligent. He knew of the location of the school, children were walking south on the west side of Orange Avenue, and he testified that he did not see them or look for children, but that he was looking straight ahead at the time of the accident. His failure to be alert as to his surroundings was sufficient evidence of his failure to exercise ordinary care. (*Harrison* v. *Gamatero,* 52 Cal.App.2d 178 [125 P.2d 904].) This conclusion supports the order granting plaintiff a new trial as to the defendants Harvey.

■ It is next argued that Philip Stockwell was not negligent. Appellants say in their opening brief, "Admittedly there was blood and hair on the door handle following the accident," but it is said that there was no evidence that Philip Stockwell opened the door of the automobile before plaintiff was struck, or that any act or neglect of his contributed to the accident. As already noted, Philip Stockwell testified that he was opening the door before the car came to a stop. It is true that he testified that he had not attempted to open it before the accident, but the trial judge was not obliged to believe him and could have believed that the door was opened against plaintiff. As before noted, Mrs. Graf testified that a woman standing on the sidewalk, and who evidently saw the accident, stated in the presence of the Harvey and Stockwell boys that plaintiff had been struck

by a car door; that this statement was made in the presence of the two boys and they made no response to it. Jack Harvey was driving the car at the request of Philip Stockwell, for the reason, as we have stated, that the Stockwell boy was suffering from snow blindness. He made a written statement after the accident, which he identified at the trial, in which he stated: "I had hurt my eyes in the snow a few days before and so I asked him to drive." Jack Harvey was the agent of Philip Stockwell and his negligence was imputable to Philip. (*Souza* v. *Corti*, 22 Cal.2d 454, 461 [139 P.2d 645, 147 A.L.R. 861].) Since the evidence was sufficient to justify a finding that Jack Harvey was negligent, the order granting a new trial as to Philip Stockwell also should be affirmed.

It is contended that Stockwell, Sr. was not responsible for the negligence of either of the two boys. It was alleged in the amended complaint that John H. Stockwell, Sr., John H. Stockwell, Jr. and Pansy A. Stockwell were the owners of the car. These allegations were denied by the answer and it was alleged that John H. Stockwell, Jr. was the owner. It was stipulated that Stockwell, Sr. was the legal owner and that Stockwell, Jr. was the registered owner, and "That the automobile was purchased from earnings of John H. Stockwell, Jr.; that when John H. Stockwell, Jr. last departed on duty with the Marines that the car was left with John H. Stockwell, Sr. and that John H. Stockwell, Sr. had the right to use that car and to declare who else was to use it and give permission to use it; that on the particular day in question, around breakfast time, Stockwell, Sr. had talked to Jack Harvey and to Philip Stockwell, and told them they could use the car after school, and that it was to be driven by Jack Harvey." It was further stipulated that Stockwell, Sr. was not the holder of a mortgage on the vehicle or a contract of conditional sale. On behalf of Stockwell, Sr., it is urged that he was not shown to have been the owner of the car within the meaning of section 402a of the Vehicle Code, under which an owner is liable for the negligence of one who is driving a car with the owner's express or implied permission.

Under section 66 of the Vehicle Code, an "Owner is a person having all the incidents of ownership, including the legal title of a vehicle whether or not such person lends, rents or pledges such vehicle; the person entitled to the possession

of a vehicle as the purchaser under a conditional sale contract; the mortgagor of a vehicle;'' etc. A ''Legal Owner,'' as defined by section 67, ''is a person holding the legal title to a vehicle under a conditional sale contract, the mortgagee of a vehicle,'' etc.

The stipulated facts were contradictory. John H. Stockwell, Jr. had purchased the car and was the holder of the legal title. Stockwell, Sr. did not hold a conditional sales contract or chattel mortgage on the car and therefore was not the ''legal owner'' as defined by section 67. Under section 402f, a ''legal owner,'' namely, a conditional vendor, before he has repossessed the vehicle, or a mortgagee out of possession, is not deemed an owner under the liability provisions of the section. The stipulation that Stockwell, Sr. was the legal owner, whatever it might mean, was not a stipulation that he held the legal title or that he was the ''owner'' within the meaning of sections 66 and 402a.

Section 402d reads in part, ''If the bailee of an owner with the permission, express or implied, of the owner permits another to operate the motor vehicle of the owner, then such bailee and such driver shall both be deemed operators of the vehicle of the owner within the meaning of subdivisions (c) and (d) of this section.'' Subdivisions c and d provide for service of process upon the operator in any action against the owner and give the owner a right of subrogation to recover from the operator the amount of any judgment rendered against him upon his owner's liability. If the operator has been served, the judgment is collectible first out of his property. The Vehicle Code does not declare that a bailee or one who borrows the car from the bailee is an owner within the meaning of section 402a. Their liability is to reimburse the owner, and is not a primary liability to the injured person. Nevertheless, we think it would be possible for a bailee to have such an interest in a vehicle as to make him a joint owner with the bailor, although we do not intimate that such was the case here; Stockwell, Sr. may have been a mere custodian. He was sued as one of the owners of the car and not as a bailee. We cannot determine from the stipulated facts whether he had an interest in the car. All we can make out of the stipulation is that Stockwell, Jr. paid for the car and allowed his father to have possession of it and use it and loan it. However, the record does not present facts from which it would appear conclusively that Stockwell, Sr. had no interest

in the car which, with his possession and control of it, would justify his being held to an owner's liability. Furthermore, since the action must be retried and, so far as we know, John H. Stockwell, Jr. may be before the court, we should not reverse the order as to Stockwell, Sr. His status as bailee, under the stipulated facts, would render him liable upon any judgment that might be rendered against John H. Stockwell, Jr. Upon a retrial all the facts as to ownership should be developed.

The order granting a new trial is affirmed as to all appealing defendants.

Wood, J., and Kincaid, J. pro tem., concurring.

A petition for a rehearing was denied May 2, 1947, and appellants' petition for a hearing by the Supreme Court was denied June 9, 1947.