[Civ. No. 14090. First Dist., Div. One. Dec. 8, 1949.]

JOSEPH CACCAMO et al., Plaintiffs and Respondents, v. RUTH SWANSTON et al., Appellants; KATIE VIGNOLA, Intervener and Respondent.

960

Hoffman & Draper for Appellants.

Thomas H. Matimore and Nathan C. Coghlan for Respondents.

BRAY, J.—Plaintiff Joseph Caccamo sued defendant Ruth Swanston for personal injuries. In a second cause of action plaintiff Rose Vignola as surviving widow sued defendant Ruth for damages for the death of her husband Silvio Vignola. Katie Vignola, mother of Silvio, filed a complaint in intervention asking damages of both defendant Ruth and plaintiff Caccamo. A jury awarded plaintiff Caccamo damages in the sum of $15,000 against defendant Ruth, and plaintiff Rose Vignola and plaintiff in intervention Katie Vignola the sum of $10,000, also against Ruth. The jury found in favor

of plaintiff Caccamo as against the charge of negligence in the complaint in intervention. From the judgment entered on these verdicts defendant Ruth appeals.

## PRINCIPAL QUESTION

The principal question is whether defendant Ruth was a coowner of the automobile driven by her husband in the accident which caused injury to plaintiff Caccamo and the deaths of Charles Swanston, the husband of Ruth, and of Silvio Vignola.

## FACTS

At about 10 p. m. on January 6, 1946, a head-on collision occurred on El Camino Real just inside San Carlos, between a car driven by Charles Swanston, in which he was riding alone, and a car driven by Joseph Caccamo, in which Silvio Vignola, the owner of the car, was riding. Both Charles Swanston and Silvio Vignola were killed in the accident. Plaintiff Caccamo received serious injuries. The car driven by Swanston ran into the Vignola car on Swanston's wrong side of the highway. As defendant makes no contention that the evidence is insufficient to show Swanston's negligence, it is unnecessary to discuss the details of the accident.

Resolving conflicts in favor of plaintiffs, as we are required to do, the evidence shows the following on the question of the ownership of the Swanston car and the consent of Ruth to its being driven by her husband while in an intoxicated condition: Charles and Ruth Swanston were married in 1939. Charles bought the car, an Oldsmobile, in 1943. The certificate of ownership then issued showed Charles as registered owner and General Motors Acceptance Corporation as legal owner. When the finance company was paid off (from what funds does not appear) the "pink slip" was delivered to Charles. Both he and Ruth signed it and sent it to the Department of Motor Vehicles for transfer of ownership. Ruth testified that she could remember no discussion at that time as to why she signed, or as to the way in which the title would be held. The new certificate, dated April 17, 1944, named Charles as registered owner and both Charles and Ruth as legal owners.

About noon Sunday, the day of the accident, Charles and Ruth left home in their car. They stopped at several bars. Charles became intoxicated. They ate dinner and Charles drank some more at a place called Kelly's. They left Kelly's with a Miss Wilson and drove to a place called Pete and Mary's. Ruth stated that she did not want to go in there.

The two women got out of the car. Ruth again repeated that she did not want to enter Pete and Mary's and told Charles that he could do what he pleased. The two women walked away, leaving the intoxicated Charles in the car, the motor running. Shortly thereafter the accident happened.

### OWNERSHIP OF CAR

There were initially several theories upon which plaintiff might have recovered: (1) Ruth was an owner of the car and was liable for the negligence of Charles, who drove with her consent. (Veh. Code, § 402.) The jury apparently did not use this basis of liability, since it awarded damages greater than the statute allows. (2) Ruth was liable for the negligence of Charles on an agency basis, since the accident occurred while Charles was engaged in partnership activities. The evidence relating to this theory will be discussed hereafter. (3) Ruth was herself negligent in consenting to the use of the car, of which she was a coowner, by Charles, who was obviously intoxicated. ". . . one who knowingly permits an unfit driver to use his automobile is liable for damages caused by the negligent acts of the unfit driver in the operation of the car." (*McCalla* v. *Grosse*, 42 Cal.App.2d 546, 550 [109 P.2d 358]; *Knight* v. *Gosselin*, 124 Cal.App. 290 [12 P.2d 454] (intoxicated driver).) This last theory raises fact issues as to coownership and consent, as well as intoxication known to Ruth. ▮ If she was a coowner with her husband, the latter, in order lawfully to have "its exclusive possession and usage for a time, would need [her] permission, express or implied . . ." (*Krum* v. *Malloy*, 22 Cal.2d 132, 135 [137 P.2d 18].) If the car was community property the wife's consent to its use by the husband could not be required nor could she prevent his using it, and therefore she would not be liable for his negligence. (*Cox* v. *Kaufman*, 77 Cal.App.2d 449 [175 P.2d 260].)

In *People* v. *One 1941 Buick Club Coupe*, 72 Cal.App.2d 593 [165 P.2d 44], there is language which seems to hold that the consent of a coowner of an automobile is not required for its use by the other coowner. However, the court does not attempt to distinguish the ruling to the contrary in *Krum* v. *Malloy, supra* (22 Cal.2d 132), and many other cases. The Buick case was one involving the forfeiture under the provisions of the Health and Safety Code of an automobile being used by a coowner for the transportation of marihuana,

and its ruling on the subject should be confined to matters involving use of the automobile in the narcotic traffic. As said in *People* v. *One 1941 Ford 8 Stake Truck,* 26 Cal.2d 503, 507-8 [159 P.2d 641] : ''Clearly shown by the terms of section 11610 et seq. is a legislative policy that the vicious traffic in narcotics, with its disastrous effect upon the unfortunate members of society, is so great an evil as to justify the drastic penalty of confiscation of vehicles used to transport the contraband. The public interest to be protected against the drug and its victims outweighs the loss suffered by those whose confidence in others proves to be misplaced, and although, in some cases, hardship may result from the enforcement of the statute, no constitutional guarantees are invaded.''

The ruling in the Krum case has been followed and approved in *Zaslow* v. *Kroenert,* 29 Cal.2d 541 [176 P.2d 1], decided subsequent to the Buick case.

█ Practically the only evidence of ownership of the car was the certificate of registration which gave Charles and Ruth as ''legal owners.'' They were not the ''legal owners'' mentioned in section 67 of the Vehicle Code which defines ''legal owner'' as ''a person holding the legal title to a vehicle under a conditional sale contract, the mortgagee of a vehicle,'' etc. They were, however, the owners. Section 66 of the Vehicle Code describes the owner as, among others, a ''person having all the incidents of ownership, including the legal title of a vehicle.'' The indicia of title here was the certificate of registration. Section 164 of the Civil Code provides, in part: ''. . . whenever any real or personal property . . . is acquired by a married woman by an instrument in writing, the presumption is that the same is her separate property, and if acquired by such married woman and any other person the presumption is that she takes the part acquired by her, as tenant in common, unless a different intention is expressed in the instrument,'' with a certain exception not applicable here. Title passes by endorsement of the certificate and compliance with section 186 of the Vehicle Code. The fact that the car was originally purchased by Charles, and that later Charles and Ruth both endorsed the certificate on line 9 (as to which the certificates states ''A new legal owner must sign on line 9'') and thereby Charles brought into being an instrument in writing evidencing title in both himself and Ruth, raises a presumption that she took the part acquired by her as a tenant in common. The certificate is *evidence* of title, although not conclusive on the subject. No evidence was

presented to overcome this presumption. This presumption threw the burden on defendant of proving that she was only the "legal owner" as defined in section 67 or that the property was community property. This defendant made no effort to do, contending that the entire burden was on plaintiffs. Primarily it was, but the burden shifted when the presumption arose.

In *Graf* v. *Harvey*, 79 Cal.App.2d 64 [179 P.2d 348], it was stipulated that Stockwell, Sr., was the legal owner and that Stockwell, Jr., was the registered owner. The stipulation then set forth that the car was purchased from Stockwell, Jr.'s, earnings and that the car was left by him with his father while he was on duty with the Marines. It was further stipulated that Stockwell, Sr., was not the holder of a mortgage on the car or of a contract of sale. The court held that these "stipulated facts were contradictory"; that "The stipulation that Stockwell, Sr. was the legal owner, whatever it might mean, was not a stipulation that he held the legal title or that he was the 'owner' within the meaning" of the Vehicle Code. The reason given was that "a 'legal owner,' namely, a conditional vendor, before he has repossessed the vehicle, or a mortgagee out of possession, is not deemed an owner under the liability provisions of the section." (P. 70.) This case is not authority for the proposition, under the facts of the case at bar, that the transfer of the certificate of ownership to the joint names did not prima facie indicate coownership.

## INSTRUCTIONS ON OWNERSHIP

Defendant contends that the court's instructions as to ownership of the automobile were erroneous. Instruction 71 gave the definition of "legal owner" as given in section 67 of the Vehicle Code and then stated that there was no evidence tending to prove that defendant was such "legal owner." Defendant's main objection to this portion of the instruction is that there is no evidence to establish that defendant was *not* a legal owner. However, the testimony that the car was originally bought by Charles and thereafter the "pink" certificate was endorsed by both and the new certificate issued to both, showed that Ruth was not holding it under any of the conditions set forth in section 67. It is idle to claim that Ruth's statement that she signed the certificate, that she knew the new one was issued in both names, and the fact that she gave no explanation of the reason for the change,

was not, at least, some evidence that she was not holding it under a conditional sales contract or as a mortgagee. The instruction was correct.

██ Instruction 72 stated that according to the certificate, Charles appeared as both registered and legal owner, indicating that both titles had merged in him; that where there is such a merger the word "legal" loses its significance because both the legal and equitable title is consolidated in one person, and that there is no longer a distinction between "legal owner" and "owner"; that it also appeared from the certificate that Ruth was a "legal" owner and that the "same situation applies to her. Unless you should find that she is a 'legal owner' as that term has been defined to you, you must then consider whether she is an owner as that term has been defined in these instructions. If you should find that defendant, Ruth Swanston, is an owner, that she acquired her interest as such in her own name, by an instrument in writing, from her husband, Charles Swanston, then and in that event a presumption arises that her husband conveyed said interest to her as a tenant in common, unless you find that a different intention was expressed in the instrument." In instruction 73 the court stated that a wife could hold property as a tenant in common with her husband. Instructions 74 and 75 then discuss tenancy in common. While these instructions are somewhat ambiguous, the effect of the instructions is that under the evidence a presumption arose that Ruth was an owner. As pointed out heretofore, such statement was correct as a matter of law. There was no error in giving these instructions.

## Instructions on Consent

██ Instruction 76 states that while each owner of an automobile held by tenants in common is entitled to possess and use such property, he may not do so to the exclusion of the other, and if he desires the exclusive use of the automobile he needs the permission, express or implied, of his coowner. It then goes on to say that if the jury should find that the automobile in question was coowned by Charles and Ruth, neither would be entitled to its exclusive possession without the consent, express or implied, of the other, and that if the jury should find that Charles did have such permission to drive it, the verdict should be against Ruth. Defendant's objection to this instruction is, first, her claim that there is no evidence of any consent by her to the use of the car by Charles, and secondly, that in some way the court has said that mere

possession of the car by one coowner establishes permission from the other. The court did not so say, and there is nothing in the instruction to support defendant's interpretation of it. The court did not go as far as the law would have permitted it to go, namely, that "In the absence of other evidence upon the issue, an inference normally would arise, upon proof of co-ownership and use of personal property by one co-owner, that such usage was . . . with the consent of the absent co-owner . . ." (*Krum* v. *Malloy, supra* [22 Cal.2d 132, 135].) There was evidence to support a finding by the jury of consent. ▮ As said in *Casey* v. *Fortune,* 78 Cal.App. 2d 922 [179 P.2d 99], cited by defendant (p. 923), "The question, however, of whether there was such permission is one to be determined by the trial court upon the facts and circumstances in evidence and the inferences reasonably to be drawn therefrom." ▮ As pointed out by defendant, the burden of showing permission was upon the plaintiffs. (*Barcus* v. *Campbell,* 90 Cal.App.2d 768 [204 P.2d 65].) ▮ The evidence shows that defendant left Charles in the driver's seat of the car, with its motor running, and said that he could do what he pleased. This was sufficient to meet the burden.

▮ Instruction 76 must be read in conjunction with all the other instructions in the case, including those on negligence. The court here was discussing the question of consent. The fact that it did not discuss negligence in the same instruction does not invalidate the instruction. The jury was told elsewhere that it was "to consider all the instructions and as a whole, and to regard each in the light of all the others." "It is not necessary that each instruction embody every fact or element essential to sustain or defeat an action or that it cover the entire case. It is sufficient if the instructions, as a whole, substantially and correctly cover the law applicable to the issues. If, under such construction, the law has been fairly and correctly presented, a judgment will not be reversed on appeal even though the instruction is otherwise open to criticism." (*Megee* v. *Fasulis,* 65 Cal.App.2d 94, 99 [150 P.2d 281].)

▮ Instruction 77 removed from the case the liability limitations of Vehicle Code, section 402. The evidence amply shows that at the time defendant left Charles in the driver's seat of the car, with the engine running, and thereby impliedly, if not expressly (she told him he could do what he pleased) consented to his using the car, that he was intoxicated and that

she knew that he was intoxicated. The instruction was proper. (*Knight* v. *Gosselin, supra* (124 Cal.App. 290).)

## AMENDMENT

The court on the next to the last day of the trial, over the objection of defendant, permitted plaintiffs to file a "Supplemental and Second Amended Complaint," and plaintiff in intervention to amend her complaint. These amendments were permitted to "conform to the proof." While the supplemental complaint is hardly a model of pleading (it states many irrelevant matters), there was no error in the court's permitting it to be filed. Defendant contends that there was no proof to which the amendment was to conform; for example, no proof of consent by defendant to the use of the car. Yet, as we have pointed out, there was such proof and there was proof on substantially all the matters alleged. Two new causes of action were set up : (1) that defendant and Charles Swanston were engaged in partnership business and that the car, at the time of the accident, was being used in such business; (2) that Charles Swanston was intoxicated and that defendant knew that when she consented to his use of the car. Both of these matters were issues in the case, and evidence had been introduced concerning them. "The rule is well established that the trial court has a sound discretion to allow amendments of pleadings during the trial, in furtherance of justice and to dispose of the case on its merits, when the adverse party is not prejudiced thereby. It has been held the court should be liberal in allowing such amendments." (*Kroplin* v. *Huston,* 79 Cal.App.2d 332, 340 [179 P.2d 575].) Testimony on these two issues was admitted without objection by defendant, and the case was tried upon these theories as well as those in the first amended complaint. No objection was made at any time in the trial court that the statute of limitations had run against these two issues. It is too late to raise it now.

The amendment made by plaintiff in intervention to her complaint is a little confusing. It does not state that the paragraphs set forth in the amendment are to replace any of the paragraphs in the complaint. However, as they are numbered VI, VII, and VIII respectively, we assume they are to replace paragraphs similarly numbered in the complaint. Apparently, the main purpose of the amendment was to eliminate from the original complaint in intervention the allega-

tions to the effect that defendant in intervention Joseph Caccamo was intoxicated at the time of the accident and that he was driving Silvio Vignola's Buick at a time of poor visibility at a speed of over 80 miles an hour with a knowing, intentional, wanton and reckless disregard of the consequences and the life and safety of Silvio. As amended the complaint in intervention merely charged that Joseph Caccamo and Charles Swanston concurrently and negligently drove their respective cars so as to cause the accident. Defendant's first objection is that the allegation in the complaint in intervention that Caccamo was intoxicated and reckless constituted an admission against interest, inasmuch as Silvio Vignola was the owner of the car and as such had a duty to control Caccamo and prevent reckless driving, that such admission entitled defendant to judgment against said plaintiff in intervention and hence should not have been replaced by amendment. Defendant did not move for judgment on the pleadings. In view of the fact that there was no evidence of intoxication of or reckless driving by Caccamo, the allowance of the amendment was well within the discretion of the court. Once having been allowed and made, the situation was as is well expressed in *Mallett* v. *Doherty,* 69 Cal.App. 653 [231 P. 1005], where the court said, concerning a similar situation with reference to admissions in an answer (p. 655): "Appellant lays much stress upon the defendant's implied admission in the original answer that he had hindered and prevented plaintiff from exercising his rights under the contract. The admission, of course, was conclusive against the defendant in the original state of the pleadings. But when the answer was amended so as to deny the alleged hindrance and prevention, the prior implied admission thereof became, at most, a mere item of evidence, the weight of which, in support of plaintiff's allegations and in contradiction of defendant's positive testimony to the contrary at the trial, was for the determination of the trial court." Here the admissions in the original complaint in intervention became, at most, items of evidence which were to be weighed by the jury in contradiction of positive testimony to the contrary. For the same reason the court properly refused to give an instruction requested by defendant to the effect that because of these admissions the jury must assume that Caccamo was intoxicated and that his intoxication was a proximate cause of the accident. (See *Lowmiller* v. *Monroe, Lyon & Miller,* 101 Cal.App. 147 [281 P. 433, 282 P. 537].)

Defendant contends that in the amended complaint in intervention there is no cause of action based on defendant's knowingly giving permission to an intoxicated driver to use the car, nor on the partnership issue. Whether pleaded or not, these were the main issues in the case. They were set forth in plaintiffs' amended complaint and they were raised by the evidence. They come within the rule set forth in *Megee* v. *Fasulis, supra* (65 Cal.App.2d 94), where the court stated (p. 101) : ''It was not necessary to have specifically pleaded intoxication as a defense to warrant an instruction on such question. It is the duty of the court to 'give instructions expounding the law upon every reasonable theory of the case finding support in the evidence.' (*Raymond* v. *Hill,* 168 Cal. 473 [143 P. 743].) It cannot be said that the question of the plaintiff's intoxication was not a part of the case as presented to the jury for determination. The evidence introduced was sufficient to raise such question . . .''

### DIRECTED VERDICT AND NONSUIT

As shown herein, there was ample evidence to support the verdicts; hence the court did not err in denying defendant's motions for nonsuit and directed verdicts.

### ADMISSION OF EVIDENCE

Defendant complains of the admission of certain evidence: first, evidence to the effect that the taxicab business in which plaintiff Caccamo was a partner decreased because of his injuries and inability to participate actively in the management due to the injuries. Her contentions go to the weight of the evidence and not to its admissibility. She cites no authorities holding that the evidence was not admissible. Moreover, there is no claim that the award to plaintiff Caccamo was excessive.

Secondly, during questioning by her own counsel, defendant stated that the partnership had been formed for tax purposes. Thereafter, plaintiffs' counsel questioned her as to the value of the partnership, either at the time of formation or when Charles died, and finally brought out the fact that at Charles' death a half interest in the partnership was worth $62,000. Defendant did not object to the question concerning the value, does not now charge that such fact was mentioned in argument to the jury, and has not shown in what way the testimony caused prejudice. This being so, admission of the testimony cannot be reversible error.

### REPEATED INSTRUCTIONS

Defendant contends that the court in its instructions overemphasized two features of the case, the question concerning coownership and the questions concerning partnership. While there was some repetition of instructions on these subjects, it did not go to the extent of over-emphasizing these matters, as was the case in *Taha* v. *Finegold,* 81 Cal.App.2d 536 [184 P.2d 533]. The question of ownership of the car was an exceedingly important element of the case, and required more than one instruction to bring to the jury all phases of the question. Moreover, the court told the jury, ''If, in these instructions, any rule, direction or idea be stated in varying ways, no emphasis thereon is intended by me, and none must be inferred by you.'' There was no error in these instructions.

### PARTNERSHIP

Charles and Ruth Swanston were copartners doing business as Quick Frozen Packers. Ruth testified that the partnership was formed for tax purposes. The Oldsmobile was used by Charles in the business, although not listed as a partnership asset. Another car, a Chevrolet, was driven by Ruth. Both partners received an expense allowance from the partnership for the use of the respective cars. The only evidence that the car was being used that Sunday on partnership business was that of a witness who testified that as they sat in one of the bars that day Charles and Ruth were discussing breaking up the partnership as they were contemplating divorce, and that ''they were discussing the settlement of the business all afternoon, off and on.'' Ruth denied that at that time she was contemplating divorce but could not remember whether that afternoon they discussed partnership matters. The court left to the jury by proper instructions the question of whether the Oldsmobile was partnership property and was being used in partnership business. The evidence would support an inference that the car was a partnership car. Whether a car being used by the partners for an afternoon's drinking at which the settlement of their partnership business is discussed ''all afternoon, off and on,'' is being used in partnership business is a question of fact for the jury. In any event, the evidence well supports the verdicts of the jury on the other phase of the case. ''. . . even though the evidence may not be sufficient to sustain a cause of action or defense to which an instruction applies, a reversal may not be had upon that ground if the evidence as to other

causes of action or defenses is sufficient to sustain the verdict.'' (*Brandes* v. *Rucker-Fuller Desk Co.*, 102 Cal.App. 221, 228 [282 P. 1009].)

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied January 7, 1950, and appellants' petition for a hearing by the Supreme Court was denied February 2, 1950. Traynor, J., and Schauer, J., voted for a hearing.