[Civ. No. 6539. Fourth Dist. Apr. 26, 1961.]

BILLY J. SADBERRY et al., Respondents, v. LEONARD EARL GRIFFITHS et al., Defendants; MARVIN GRIFFITHS et al., Appellants.

Chinello & Chinello for Appellants.

Twohig, Weingarten & Haas and Richard M. Schnal for Respondents.

SHEPARD, J.—This is an appeal by certain defendants from a judgment for plaintiffs on account of personal injuries arising out of an automobile accident.

Viewing the evidence, as we must, in a light favorable to the judgment (*Brewer* v. *Simpson*, 53 Cal.2d 567, 583 [1, 2] [2 Cal.Rptr. 609, 349 P.2d 289]), a brief outline of the facts shown by the record before us is as follows: Defendants Leonard Earl Griffiths (hereinafter called "Leonard"), Marvin Griffiths and Rex Griffiths are brothers. Marvin and Rex Griffiths are partners residing and doing business in the State of Texas under the name Griffiths Implement Company. Marvin, Rex and Griffiths Implement Company are the sole appellants herein and will be hereinafter grouped together under the name "Company" in the singular. Leonard, on December 26, 1956, the date of the accident here under consideration, was driving a 1953 Mercury automobile purchased and registered in the State of Texas under the name "Griffiths Implement," which is admittedly identical with the business partnership named Griffiths Implement Company in the pleadings. Leonard's name did not appear on the registration certificate. There is no evidence that any other name appeared on the registration certificate. Leonard was operating the car with the written permission of Company. A letter was written on behalf of Company to show permission to Leonard to operate the Mercury car, stating said car was covered by Company insurance but that it was the property of Leonard.

Leonard, plaintiff Billy J. Sadberry, hereinafter called "Billy," and Kenneth W. Wilson, hereinafter called "Wilson," were serving in the United States Marine Corps at Moffett Field, California. Freeda F. Sadberry, hereinafter called "Freeda," is the wife of Billy, and Betty A. Banks, hereinafter called "Betty," is her sister. Billy and Freeda (with their infant son) and Betty wished to visit Billy's parents in Santa Ana, California, and Wilson wished to visit his parents at nearby Norwalk, California. Billy and Wilson talked to Leonard about making the trip and taking with them Billy's family. Billy and Wilson offered to pay gasoline, oil, meals, lodging expenses, and to have Billy's father, who operated an automobile repair shop, repair the transmission in Leonard's car while at Santa Ana. Leonard accepted, and the group were on the trip in said 1953 Mercury with Leonard driving when the accident happened which caused the injuries complained of.

Trial was had before court sitting without a jury. The primary points of dispute at the trial and which remained subjects of dispute on this appeal, were whether or not plaintiffs were passengers for hire, and not guests; second, whether

or not Company was the owner of the Mercury automobile; and third, whether or not Leonard was driving with Company's permission. The trial court, in effect, found as to such matters that plaintiffs were passengers for hire, and not guests; the Company was the owner of the Mercury automobile which Leonard was then driving; that Leonard was driving with the consent of Company; that he was not driving as the agent of Company in the course and scope of employment; that he was driving negligently and that his negligence was the proximate cause of the injuries complained of. Judgment was rendered for all plaintiffs, against Leonard in amounts which aggregated a total sum of $16,515.35, and against Company in the amount of $10,000 on its statutory liability under Vehicle Code, section 402 (now §§ 17150 and 17151). The individual amounts were graded as to Company in the proportion that $10,000 bears ratio to $16,515.35. Company appeals.

The sole grounds of appeal are, first, that the evidence was insufficient to support the finding that Company was the owner of said Mercury automobile; second, that the evidence was insufficient to support the court's finding that plaintiffs were passengers for hire, and not guests.

### Presumption of Ownership

Appellants, on their first point, contend that under the rules of evidence as administered by the courts of Texas the presumption of ownership arising from registration is completely obliterated and vanishes from the case in the face of positive contradictory evidence, and that such contradictory evidence was present in the case at bar, citing *Knops* v. *Ordonica* (Tex.Civ.App.), 242 S.W.2d 454; *Empire Gas & Fuel Co.* v. *Muegge,* 135 Tex. 520 [143 S.W.2d 763]; and other Texas cases.

The cases cited do hold that the registration does raise a prima facie rebuttable presumption of ownership and that in the face of positive contrary evidence such presumption disappears. They do, however, hold also that it is a "true presumption." Apparently, from a perusal of these cases, the substantive law of Texas on ownership is not different in any material respect from the law of California, nor is there any substantial difference on the presumption of ownership from registration. The only difference to be found lies in the probative weight given the presumption before the trial court. We are unable to agree with appellants that the rules of pro-

cedure in the courts of Texas in this respect can be controlling in the courts of California in the case of an accident which happened in California wherein the rights of the parties are tried before the courts of California.

It is clear that registration does, under the laws of Texas, raise the prima facie presumption of ownership and that, as was said in the Muegge case, *supra*, this is a "true presumption." In this respect it is identical with California. As was said in *Sayles* v. *Peters*, 11 Cal.App.2d 401, 407 [54 P.2d 94]:

"In 78 A.L.R., page 884, we find the following general statement: 'Generally, questions of evidence as, for instance, its admissibility, sufficiency, etc., are regarded as purely questions of remedy to be governed by the law of the forum, and the question of presumption and burden of proof is, at least by the weight of authority, ordinarily regarded as subject to the same rule.' We do not need to quote further, but this statement is supported by a long list of authorities. Thus, if under our law the testimony is sufficient to support the finding of the trial court, the judgment should be affirmed."

That this is the established rule generally followed throughout the United States is hardly open to question. (11 Cal. Jur.2d 201 [§ 97]; 15 C.J.S. 955 [§ 22i]; 11 Am.Jur. 521 [§ 203]; Restatement, Conflict of Laws, § 594.)

 The rule in California is also clear that conflicting adverse testimony does not blot out or nullify the presumption so as to take away from the trier of fact the right and duty to weigh one against the other. (*Smellie* v. *Southern Pacific Co.*, 212 Cal. 540, 549 [299 P. 529]; *Standard Oil Co.* v. *Houser*, 101 Cal.App.2d 480, 488 [9] [225 P.2d 539]; *Rody* v. *Winn*, 162 Cal.App.2d 35, 39 [327 P.2d 579]; *Estate of Nidever*, 181 Cal.App.2d 367, 380 [10] [5 Cal.Rptr. 343].) Other authorities in California cited by appellants merely hold that the presumption is not conclusive.

 Furthermore, the testimony produced by Company was susceptible of construction by the trial court in support of, rather than contrary to, the presumption. The trial court was not compelled to believe all of the testimony produced by Company. This testimony showed that one of Company helped to negotiate the purchase of the car; that Company advanced at least a part of and possibly the entire purchase price of the car; that the car was deliberately and intentionally taken in the name of Company; that Company considered it to be covered by the business insurance; that it was

on some occasions used on Company business; that Leonard, when at home, worked on Company business; that Leonard was on leave of absence from the business; that no effort was ever made at any time to have the registration transferred to Leonard; that the $700 claimed to have belonged to Leonard actually came from shipments of grain by Company and apparently was never in the possession of or name of Leonard before it was paid for the car; that the $400 claimed to have been loaned to Leonard was handled in the same fashion; that no written evidence of the execution of a note or of book accounts was ever produced to substantiate appellants' claim that these sums actually belonged to Leonard.

Plaintiffs were not bound by the letter for the Marine Corps reciting the insurance coverage. Appellants' contended facts about this letter were first brought to light by Company's depositions. It was originally offered for the sole purpose of showing Company's permission to Leonard to use the car. It was at defense counsel's suggestion that plaintiffs' counsel conceded that it be received for all purposes. While it does contain a self-serving statement that Company insurance covered the car but that the car was the personal property of Leonard, these two statements have connotations of self-contradiction. The trial court may well have considered such ownership statement a mere conclusion of law. (*Fesler* v. *Rawlins,* 43 Cal.App.2d 541, 543 [3] [111 P.2d 380].) We think in the face of all the evidence it cannot be said that the letter foreclosed the trial court from weighing the whole evidence along with the presumption of ownership. (Code Civ. Proc., § 2049; McCormick on Evidence, p. 70 [§ 38]; Witkin, California Evidence, 717 [§ 680].) The evidence was sufficient to support the finding of the court that Company was the owner of the car and that Leonard was using it with Company permission. (*Flemmer* v. *Monckton,* 73 Cal.App.2d 271, 275 [3] [166 P.2d 380]; *Casey* v. *Fortune,* 78 Cal.App. 2d 922, 924 [3] [179 P.2d 99].)

### Finding on Ownership

■ Next, appellants contend that the finding by the court that Company was the legal owner of the car is inconsistent with the finding that Company was the owner, citing *Eckhardt* v. *Morley,* 220 Cal. 229, 230 [1] [30 P.2d 423]; *Caccamo* v. *Swanston,* 94 Cal.App.2d 957, 964 [2] [212 P.2d 246]; *Graf* v. *Harvey,* 79 Cal.App.2d 64, 69 [3] [179 P.2d 348]; Veh. Code, §§ 66, 67.

We do not find any inconsistency in such finding. The cited cases deal with the differences between "legal owner" and "registered owner" where different persons are involved in each. The code sections deal with the same problem. Vehicle Code, section 66 (now § 460), defines an "owner" as a person having all the incidents of ownership, including legal title. Obviously "owner" is the broad and inclusive term. Depending upon the context of the discussion in which it is used, it may and often does include the "legal owner" defined by section 67 (now § 370), or "registered owner" defined by section 68 (now § 505). Nothing in the context of the findings criticised give any indication of an intent to use the term "legal owner" in an exclusive sense. (See *Caccamo* v. *Swanston, supra,* 966 [4].) We find no merit in this criticism of the findings.

### PASSENGERS OR GUESTS

 Appellants next contend that the evidence does not support the finding that plaintiffs were "passengers" as distinguished from "guests." The evidence produced by plaintiffs was that Leonard's gasoline, oil, meals and lodging were to be furnished during the trip and that upon reaching Santa Ana the transmission of Leonard's car (with which he was then having trouble) was to be repaired in the automobile repair garage of Billy's father. The discussion in this respect clearly contemplated the inclusion in the ride of all of the plaintiffs herein. "Compensation" as referred to in the "guest" statute (now Veh. Code, § 17158), may be in some other form than cash or its equivalent. (*Druzanich* v. *Criley,* 19 Cal.2d 439, 443 [2] [122 P.2d 53] [aid in driving]; *Kruzie* v. *Sanders,* 23 Cal.2d 237, 241 [5] [143 P.2d 704] [shopping aid]; *Martinez* v. *Southern Pacific Co.,* 45 Cal.2d 244, 251 [10] [288 P.2d 868] [share ride—household expenses]; *Whitmore* v. *French,* 37 Cal.2d 744, 746 [4] [235 P.2d 3] [pay expenses].) For further authorities, see *Gillespie* v. *Rawlings,* 49 Cal.2d 359, 364-365 [1] [317 P.2d 601].

We find nothing in *Bowman* v. *Collins,* 181 Cal.App.2d 807 [5 Cal.Rptr. 776], nor in any of the other authorities cited by appellants, in conflict with the foregoing.

The question of whether or not the benefit to be derived by Leonard was a motivating influence for the trip is primarily a question of fact for the trial court. As was said in *Martinez* v. *Southern Pacific Co., supra,* at page 250 [4] : " 'It is for the trier of fact to determine whether the rider

conferred a benefit or whether the ride was merely of a social nature. . . . [Citation.] Once the trier of fact has determined the fact of benefit, the province of the reviewing court is simply to examine the record to determine whether this factual finding is substantially supported.' "

We are satisfied that the evidence was sufficient to support the conclusion of the trial court that Leonard was to receive "compensation" for the ride, and that this was a motivating influence.

The liability of appellants appears to have been correctly restricted in accordance with the statutory limitation. (See *Martinez* v. *Southern Pacific Co., supra,* at page 254 [19].)

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.