[Civ. No. 6752. First Appellate District, Division One.—April 30, 1929.]

JOHN CAMBOU et al., Respondents, v. J. MARTY et al., Appellants.

Alfred C. Skaife, H. W. B. Smith and L. R. Lambert for Appellants.

W. F. Cowan for Respondents.

PARKER, J., *pro tem.*—This is an appeal by defendants from a judgment in favor of plaintiffs in an action for damages. Plaintiffs are husband and wife and the cause upon which the action rests is the negligence of defendants through and as a result of which a minor child of plaintiffs was killed. No questions are presented which involve the joinder of parties or the amount of the judgment. The facts are not in dispute. The appellants' contentions are twofold. First, they contend that there is no negligence chargeable to defendants or either of them and, secondly, that if negligence is chargeable to them the negligence of plaintiffs, proximately contributing to the injury of the child, is sufficient to preclude a recovery. It thus

becomes necessary to review the facts. Plaintiffs are husband and wife and were the parents of two minor children. One of these children was a boy named Ernest, aged seven, and the other was a boy named Jackie, age about eighteen months at the time of his death. The plaintiffs lived upon a small ranch in Sonoma County. Incidental to or in conjunction with the ranch the plaintiffs, at certain seasons of the year, maintained a small resort and catered to summer guests. It is admitted, however, that at the time in question here the season was ended and that there were no guests on the ranch nor was the ranch in any sense or manner open to or soliciting public patronage. The ranch-house is situated some short distance from the main road and is reached only by leaving that road and entering upon the lands of plaintiffs. The defendants Marty are father and son, Seraphin being the son. It may be here noted that the Cambou family and the Marty family are close relatives, Marty, Sr., being the uncle of the older Cambou. Nothing in the record discloses any breach in the family contact incident to the relationship. The home of each was always open to the other and the various members of the respective families were on terms of social intimacy. At about 8 A. M. on the morning in question the defendant Seraphin Marty arrived at the Cambou home inquiring for Mr. Cambou. He had come in an automobile described as a two-seated car with the top up. He drove up to the house and parked his car in the driveway and alighted. It is to be noted that the ranch-house was built on or into a sidehill and the approach thereto was up an incline. The defendant Marty left his car parked in this incline, the front of the car facing the exit from the premises and likewise facing down the hill. The gradient of the incline was such that the car could be thrown in gear and started by its own weight, when the brakes were released. Before alighting defendant Marty put on the brakes and threw the car into reverse gear, with the engine off. He then entered the house, where he found Mrs. Cambou in the kitchen with the baby Jackie. He inquired of her concerning the whereabouts of her husband. She told him the husband was out milking the cow or feeding the chickens, whereupon Marty left in search of Mr. Cambou. It may be noted here that at that time the baby Jackie was dressed and in the

presence of Marty and within his hearing told the mother that he, Jackie, was going outside to get an egg. Marty, after leaving the house, went in search of the husband. Finding him and disclosing that the purpose of his visit was to secure the loan of one or two grape pickers, the defendant Marty started back for his automobile. It is undisputed that the errand or business of Marty on the premises was urgent and that great haste characterized his every movement. In his departure from the place where he had conversed with the husband he ran rapidly, as he states, "going fast but not like a wild man." He jumped hurriedly into the auto and releasing the brakes and disengaging the reverse gear, the auto started up right away, coasting down. The lad had gone but a short distance when he was attracted by the screaming of the other Cambou child, Ernest, and looking back he noticed the baby, Jackie, sitting in the road. Without further elaborating here, he had run over the child, and from the injuries inflicted, the child, within a few days, died. There are many questions of law hinted at which are said to control the liabilities of the parties hereto. ■ At the outset some argument is made as to the character of the premises, with relation to their being public or private, that from a finding of the said character we might definitely fix the status of Marty, whether as an invitee, trespasser, licensee or guest. We may pass these questions with little discussion. It is not claimed that the premises were such as to constitute the driveway a public highway and all sides seem willing to concede that the said driveway and the premises in and about the house were private premises constituting the yard and home of Cambou's family. Nor is the status of defendant Marty seriously questioned. As a relation and friend on a neighborly errand he was invited at all times and welcomed. Quoting from Cooley on Torts, page 303: "Every man, by implication invites others to come to his house as they may have proper occasion either of business or courtesy or information, etc. Custom must determine in these cases what the limit is of that implied invitation." Without developing this thought we may at once conclude that Marty was not a trespasser. In fact, without attempting to label his technical status, he was there, charged with no legal or other restrictions other

than that he should exercise ordinary care. ■ The trial court found as a fact that defendant Marty did not exercise ordinary care. We are thus brought to the question of the sufficiency of the evidence to justify the finding. Negligence remains, as it has always been, relative to time, place and circumstances. Text-writers are at a loss to give any fast and rigid definition of the term and the courts have abandoned any attempt to frame such a definition. As new conditions develop new situations arise. Custom and habit build up practices universally recognized as prudent. Some few years ago it would have been deemed negligent *per se* for a person to attempt to drive a machine claiming that it operated through an auto power. In fact, negligence would have been a mild term. Therefore, in determining the nature of defendant's conduct in the instant case we confine ourselves to the facts before us. In addition to the general facts as stated we have other facts to consider and which aid our inquiry. The defendant Marty had been a frequent visitor at the Cambou home. He knew the family and the individual members thereof. He knew that the baby, Jackie, was a child of walking age. On different occasions he had seen him playing around the yard and the premises and on some occasions had seen him playing around the place where the automobile had been left standing. In fact he had seen the baby playing out in the yard the day before this fatal occurrence. There is also the additional fact, testified to by defendant Marty, that if he had looked he could have seen the baby, but that he did not look before starting the auto in motion. Another significant fact disclosed from the testimony of the defendant Marty is that when the boy Ernest shouted to him, to use his own language, "I stopped the machine right away and I figures, I said to myself, 'I wonder if Jackie was around there playing.'" We conclude from all of these facts that the trial court's finding of negligence was supported. As is urged, it may be what counsel is pleased to term "a close case." The fact is that defendant Marty forgot all about the baby. In his haste to return home he had in mind nothing but a hurried exit. Whatever might be the general rule concerning the caution or degree of care required in and about public places where children are known to congregate, the situation here is different,

From all of the facts the defendant here was charged with a duty while in these premises and that duty was to be ever watchful. His own admission that if he had looked he could have seen the child indicates that the child was not under the car or concealed. It would have taken but a second or two to have looked around the car. ■ Any reasonable man can be charged with knowledge that a child is apt to be found at any place about the family yard. Charged with that knowledge it becomes his duty to use vigilance and care before setting in motion a dangerous instrumentality in that locality. Failing in the duty he is negligent. We cannot concede that it is a harsh burden to place upon a visitor at a family home. Where a life may be jeopardized by a failure to make certain a clear path it surely is not unreasonable, as a matter of law, to insist that ordinary care demands some precaution before starting an automobile. Nor is it unreasonable to include within the required precaution the duty here announced. In the annotation to 44 A. L. R., at page 434, it is said: ''The tendency of the later cases would seem to indicate that the courts are requiring a higher degree of care on the part of the operators of automobiles towards children playing on or in proximity to their automobiles, particularly in those cases in which the driver had notice of the children's presence in or about the machine.'' At this stage of our economic progress all the best thought is being directed toward child welfare and the promotion of the physical, mental and moral welfare of the generation to succeed the present. A logical following out of the idea would suggest that in all contact with children a higher standard of care be established as necessary to meet the law's requirement of ordinary care under the circumstances. Concluding the present inquiry it is obvious that a course of conduct which indicates no care at all and a complete disregard of any caution will not measure up to such a standard or to any standard of ordinary prudence. Coming to the defense of contributory negligence little may be said. The home is a place of refuge, a sanctuary. The yard surrounding is the same. It is the human instinct to segregate from the rest of the world one little spot in which the family may be safe and secure. The chief reason for a home, with its yard, is that there may be such

a place. ▇ Under all of the circumstances we cannot say, as a matter of law, that it is negligence for a mother to permit a child of the age and strength of the baby Jackie to play around the private yard and walks of her home. The defendant Marty was a relative and friend and surely his presence upon the premises did not furnish a source of danger which the mother, in the exercise of ordinary care, was charged to anticipate and guard against. As stated hereinbefore, no other issues are presented. The liability of the older Marty is admitted under the conclusions here reached.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 29, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 27, 1929.

All the Justices concurred.