[Civ. No. 17478.   Second Dist., Div. Three.   Sept. 18, 1950.]

OLIVER B. FREDERIKSEN, Appellant, v. ALBERT ROSS COSTNER et al., Respondents.

Murchison & Myers, John B. Myers, Claude B. Cumming and V. Edward Drake for Appellant.

Hon & Jarrett, Gaines Hon and Joseph W. Jarrett for Respondents.

VALLÉE, J.—Appeal by plaintiff from a judgment of nonsuit in an action for damages for the alleged wrongful death of a child named Cheryl, 3 years and 2 months old at the time of her death. Plaintiff is the father of Cheryl. The motion for judgment of nonsuit was granted on the ground there was no evidence from which an inference of negligence reasonably could be drawn.

The evidence is stated in accord with the rules applicable to a motion for a judgment of nonsuit which need not be repeated.

Defendants, as partners, conducted a wholesale egg business in a structure which consisted of a building (the egg house) and a dock. A small office adjoined the egg house. On March 28, 1948, defendant Albert Costner parked a GMC ton-and-a-half truck owned by himself and Ford Costner at the dock. The truck was backed up to the dock, its front facing south. Plaintiff parked his car to the east of the truck and next to it, its front headed to the dock. The dock was elevated, with steps to the west of the parked truck leading from the street to the top of the dock.

Plaintiff was at the property to buy four cases of eggs. As he left his car, he carried Cheryl, who was 38 inches tall in her bare feet, toward the office. Cheryl wore rain boots with about an inch heel. Plaintiff and Cheryl went up the steps to the dock. Albert Costner was on the dock. He talked to Cheryl. Plaintiff, Ford Costner and Cheryl went into the egg house for eggs. When they returned outside Cheryl played on the dock. Albert Costner was on the platform talking to Cheryl, "keeping her entertained" while

she played. Albert loaded eggs onto the truck and then proceeded to its cab. When he got into the cab there was a note hanging from the ignition key, which he read. He pulled the note off, crumpled it, dropped it, turned on the motor and started forward. As he did so he heard screaming and stopped. The truck traveled between 25 and 30 feet from the time it started until it stopped. When it stopped, Cheryl was lying to the rear of the left dual wheels on the driver's side.

Plaintiff was in his car arranging the third case of eggs when he heard the truck door slam. He immediately backed out between the truck and his car, observed that Cheryl was not in sight and yelled in a loud voice, "Hey, I got a little girl some place." He swung to the ground to see if Cheryl was on the other side of the truck. Before he could see under the truck, it started forward and as it did he saw Cheryl running in front of it. She was 2 to 4 feet in front of the truck to the left of the front hood. Her left arm was caught by the front bumper; the front wheel and both rear dual wheels ran over her.

Albert Costner testified that after he loaded the truck with a few cases of eggs, he put the rear gate in, went to the office, got a sales book and immediately went to the truck to drive it way. "Q. Did you make any observation at all as to where the little girl was at the time you left the office? A. I believe she was on the dock. She couldn't have been in front of me or I would have had to go around her. Q. Do you have a present memory of her on the dock close to the steps? A. No, sir. I didn't observe exactly where she was. . . . Q. Did you give any further thought at all to the location of the girl from the time that you left the office until you got to the truck? A. No, sir. . . . I don't recall whether I noticed her definitely as I went up around the truck or not. Q. And you are not able to tell us with any certainty as to how close she was to the steps at the time you last noticed her? A. No, sir. Q. Are you able to tell us whether she was standing still, running or walking, what she was doing? A. No, I wouldn't be able to tell that. Q. Did you notice whether or not she had anything in her hand? A. Well, as she came up she had Easter eggs in her hands. . . . Q. Did you talk to her at all? A. Yes. Q. Where were you when you talked to her? A. On the dock. Q. Where on the dock were you, Mr. Costner? A. Right by the steps. Q. Would you say, then, that during all the time that you saw

the child you were near the steps? A. No, I had loaded some eggs. I had put the gate on my truck. Q. Was she by the steps all this time? A. I was not watching her. Q. You did talk to her? A. Yes. Q. Did you play with her or anything like that? A. Oh, I just talked to her like anyone would to a child. Q. And you say at this time she was at the steps; is that correct? A. She was on the dock by the steps. . . . Q. Is it true, Mr. Costner, that as you left the office and passed the little girl and started for your truck that you said good bye to her and waved at her and made some movement toward her? A. I wouldn't tell that.'' He also testified that it was about 10 feet from the steps to the truck; he passed Cheryl on the dock as he left his truck to go into the office; he got in the truck from the left side, and at that time Cheryl was up in back of the truck; the cab windows were up and the cab closed; they could have been opened; the weather was clear; when he started from the office to the truck he knew plaintiff was loading cases between the truck and his car; he knew then that from time to time customers came to the place with children; he had seen young children around there a number of times.

A witness, Kuretich, testified that Albert Costner told him ''He left the office and walked out to where the little girl was on the platform near the stairs and talked to her and then walked around in front of the truck and got into the truck and drove off.''

Ford Costner testified that after putting the cases of eggs on the dock for plaintiff, he went to the office; when the motor of the truck started, he glanced up and Cheryl was just disappearing in front of the fender of the truck; this was when the motor started, not when the truck started; she was running; the left front fender struck her.

The conduct of small children is unpredictable and their propensity to run in any direction is a matter of common knowledge. ■ A greater degree of care is required of a driver of a vehicle where he knows a small child is at play than in a case where a person of mature discretion is involved. (*Parra* v. *Cleaver,* 110 Cal.App. 168, 171 [294 P. 6].) As was said in *Lampton* v. *Davis Standard Bread Co.,* 48 Cal.App. 116, 118 [191 P. 710], ''[t]he proximity of the place where Graham was driving to the adjacent school grounds, and the hour, at which children might, with certainty, be expected to be using the street, imposed upon him a greater degree of caution than he might be required to use under ordinary circumstances. That which would be but ordinary negligence in

reference to a grown person may be gross negligence as respects a child." In *Conroy* v. *Perez*, 64 Cal.App.2d 217, it was said, p. 224 [148 P.2d 680]: "[I]f the evidence shows that a driver has knowledge of the presence of children he may be held to have been responsible [for their safety] although it appears that he did not see the injured child in time to prevent the injury. (See 2 Cal.Jur. Ten-Yr.Supp., p. 454.)"

In *Cambou* v. *Marty*, 98 Cal.App. 598 [277 P. 365], the defendant parked his car in gear on an incline near plaintiffs' house. When he got back into his car he hurriedly started it down the incline without looking to see if a child were near by, although he knew that the plaintiffs had children who were accustomed to playing in the yard and could have seen the child if he had looked. It was held that a finding that defendant was negligent in running over plaintiffs' son was supported by the evidence. The facts here present a much stronger case. The same also may be said with respect to the facts in *Parra* v. *Cleaver*, 110 Cal.App. 168 [294 P. 6], in which a finding of negligence was held to be supported by the evidence.

The author of the annotation "Liability for injury to child playing on or in proximity to automobile" in 44 American Law Reports 434, says, page 434: "The tendency of the later cases would seem to indicate that the courts are requiring a higher degree of care on the part of the operators of automobiles towards children playing on or in proximity to their automobiles than was announced in the original annotation [1 A.L.R. 1385], particularly in those cases in which the driver had notice of the children's presence on or about the machine." (See also *Gackstetter* v. *Market Street Ry. Co.*, 130 Cal.App. 316 [20 P.2d 93]; *Gorzeman* v. *Artz*, 13 Cal.App.2d 660 [57 P.2d 550]; *Harrison* v. *Gamatero*, 52 Cal.App.2d 178, 183, 184 [125 P.2d 904]; *Graf* v. *Harvey*, 79 Cal.App.2d 64 [179 P.2d 348]; *Waid* v. *Smith*, 87 Cal.App.2d 32 [195 P.2d 862].)

■ Albert Costner knew of Cheryl's presence on the premises near the truck. He talked to, and played with, her. The jury reasonably could have concluded from the testimony of Kuretich that just before Albert got into the truck to drive away, he played with her near the steps, about 10 feet from the truck and immediately got into the cab. The jury could also have reasonably concluded that Albert, without making any observation at all to see where Cheryl was, started the truck forward; that he read the note hanging from the ignition

458

key, turned on the motor and started forward without looking ahead or about him, and that if he had done so he would have see Cheryl.

Whether Albert Costner, having once observed the child within a few feet of his truck while it was still motionless, was negligent in starting the truck without making any further effort to ascertain the conduct and whereabouts of Cheryl, was a question of fact. (*Springer* v. *Sodestrom*, 54 Cal.App.2d 704, 709 [129 P.2d 499].) It cannot be said, as a matter of law, that he exercised the degree of care which a reasonable person would have exercised under similar circumstances to protect Cheryl from harm. The case presents a question of fact which should have been left to the jury.

Reversed.

Shinn, P. J., and Wood (Parker), J., concurred.