David IRISH, a minor, by and through his Guardian Ad Litem, Clifford L. Irish, and Clifford L. Irish, Appellants,

v.

UNITED STATES of America, Appellee.

No. 14124.

United States Court of Appeals Ninth Circuit.

July 1, 1955.

---

J. Adrian Palmquist, Robert H. Kroniger, Oakland, Cal., Francis T. Cornish, Berkeley, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., San Francisco, Cal., William H. Lally, Robert E. Woodward, Sacramento, Cal., for appellee.

Before HEALY and CHAMBERS, Circuit Judges, and WIIG, District Judge.

WIIG, District Judge.

The question presented on this appeal is whether the trial court erred in entering judgment for the defendant in an action for damages against the United States of America under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671–2680.

We are of the view that the case should be remanded to the district court for the purpose of enlarging and clarifying the findings of fact in the light of the California law of negligence as we understand it to be. If this cannot be done, then the judgment should stand reversed and a new trial granted to the plaintiffs.

Evidence at the trial showed that on March 22, 1952, David Irish, aged three years and eight months, and his sister, Eileen, aged five, were playing on Triplett Way in Marysville, California. At around noon, the United States mailman, Lyle James Smith, drove his mail truck along Triplett Way, a curving, paved, dead-end street in a new residential subdivision near the edge of town. He was twenty years of age and had been employed in his occupation for less than six months. As was his practice, Smith drove on the left-hand side of the street, stopping at the property line between two houses and making a delivery to each house before moving on for his next deliveries.

Smith stopped his truck approximately two houses away from the property line between the Irish residence and the next house, that of the Carters. He left his motor running, as he usually did. The Irish children had become friendly with Smith, who often let them ride on the truck, and as he stopped they came running down the sidewalk to greet him. On this day, he allowed David and Eileen to ride approximately forty feet to the Irish-Carter property line.

Smith did not pull to the curb at this stop because the Carter automobile was parked in front of the Carter house. He parked about a car's width from the left-hand side of the curb to make it easier to pull out and around the Carter car for his next stop. The two children re-

mained on the running board where they had been riding, and it was necessary for Smith to tell them to get off so he could alight and deliver the mail to the two houses.

As he left to make his deliveries, Eileen and David were standing near the truck, either in the street or on the sidewalk near the curb. When he returned to the truck about one-half minute later, he saw only Eileen, who was again standing on the running board of the truck, in approximately the same position in which she had ridden before. David was not in sight. Smith then lifted Eileen from the truck and placed her on the sidewalk area.

Smith then got into his truck and proceeded to pull out into the street around the Carter car. He had traveled about four or five feet when he felt a bump, as though he had run over some object, and heard a scream. He stopped the truck, got out, and saw David lying in the street a few feet from the left rear wheel. David was screaming and vomiting and had been seriously injured.

An action for damages was filed on behalf of David, by and through his father, as his Guardian Ad Litem, and by the father, against the United States of America and Smith in the United States District Court. The action was based on 28 U.S.C.A. § 2674, claiming negligence on the part of Smith. The action against Smith was dismissed and the trial proceeded against the United States.

At the close of the evidence, the trial court stated that the question of liability should be determined before ruling on the matter of damages. The only other statement by the court with regard to the question of liability is found in the relevant portion of his findings of fact:

"It is not true that the said Smith negligently drove, operated, maintained or controlled the said mail truck. * * * That it is not true that the collision or the injuries sustained by the said minor David Irish proximately resulted from any negligence of the defendants or either of them."

The California cases dealing with the duty of a driver of a vehicle in the presence of small children indicate that the standard of care is high. There are numerous statements such as found in Frederiksen v. Costner, 1950, 99 Cal.App.2d 453, 456, 221 P.2d 1008, 1010:

"The conduct of small children is unpredictable and their propensity to run in any direction is a matter of common knowledge. A greater degree of care is required of a driver of a vehicle where he knows a small child is at play than in a case where a person of mature discretion is involved."

The cases indicate that the presence of children is in itself a warning requiring the exercise of care for their safety. If the evidence shows the driver has or should have knowledge of the presence of children, he may be held to have been responsible although it appears that he did not see the injured child in time to prevent the injury. This seems to be especially true when the injury occurs in or about the child's home or yard area. With such knowledge, it becomes his duty to be ever watchful and to use vigilance and care before setting in motion a dangerous instrumentality in that locality. See Dike v. Golden State Co., 1954, 125 Cal.App.2d 6, 269 P.2d 619; Freeland v. Jewel Tea Co., 1953, 118 Cal.App.2d 764, 258 P.2d 1032; Frederiksen v. Costner, supra; Conroy v. Perez, 1944, 64 Cal. App.2d 217, 148 P.2d 680; Springer v. Sodestrom, 1942, 54 Cal.App.2d 704, 129 P.2d 499; Gorzeman v. Artz, 1936, 13 Cal.App.2d 660, 57 P.2d 550; Cambou v. Marty, 1929, 98 Cal.App. 598, 277 P. 365.

But a mere statement of the law is not sufficient, for negligence depends on the conduct under the circumstances. As will be pointed out, the circumstances in this case are not well-defined and permit of various inferences.

At the trial there developed conflicting evidence as to how the accident occurred. Among the points left uncertain were the location of David just before the accident

and which wheel of the truck ran over or collided with his body.

Smith testified that as he returned from delivering the mail he, did not see David at all, although as he approached he could and did see ahead of, behind, and under the truck. Another statement was:

"I had gone to the Irish home and delivered the mail, and to the next house, and had walked back to the truck, and it was an every-day occurrence to find children around playing, and I hadn't paid much attention, and I didn't see any children, and hadn't made a practice of walking around to see if there was anyone there, and I got in and drove off, * * *."

He also stated:

"I told Eileen to get off, and before that I had told the rest of them to stay away and stay out of the truck, but they didn't pay any attention to me. After I came out Eileen was on the truck, but David wasn't, so I surmised he got away from the truck."

Smith also testified that he ran over David with the left rear wheel, as indicated by the following excerpts from his testimony:

"Q. Now, you mentioned feeling a bump. Can you tell us, please, whether that bump was to the right or left side of the truck? A. It was to the left side.

"Q. Left side of the truck? A. That is right."

and later:

"Q. There is no question in your mind which wheel of this truck went over this boy, is there? A. To me, it was the left wheel.

\* \* \* \* \* \*

"The Court: Are you sure? Could it have been the right wheel?

A. In all probability, it could have been, but I don't think it was. To me, it was the left rear wheel. In all probability it might have been the right wheel, but not to me."

As to the position of David's body following the accident, both Smith and David's mother testified that the body was near the rear left wheel, about four or five feet behind it. There is no conflict on this point.

If no other evidence had been adduced at the trial, it would have been possible for the trial court to infer that David had run up to the truck from some undisclosed location to be struck down by the left rear wheel. In such a case, the finding of no negligence might have been justified.

There was one eye-witness to the accident, however. He was Donald Hubbard, who lived across the street and one house up from the Irish house. At the time of the accident, Donald was eight years old, nine at the trial. His testimony, if credible, sheds light on the events.[1] Donald was lying on his lawn waiting for the mail to be delivered. He told the court that he saw the events and the accident, but his testimony leaves much to be desired in the way of clarity.

On direct examination, Donald testified that he saw David hanging on the running board of the right rear side of the truck, and as the truck started, David fell and was run over by the right rear wheel. Then, in answer to questions by the court, his testimony varied somewhat. The following questions were asked by the court:

"Q. He was on the side of the truck when the mailman got in? A. Yes.

"Q. Didn't you say he was over on your side? A. Yes, that is what I mean.

---

1. The record indicates that Donald had some difficulty in qualifying as a witness. In response to the court's question as to what would happen to him if he didn't tell the truth, Donald answered that he didn't know. When Donald realized that he might be put "In jail" for not telling the truth, the court allowed him to testify.

"Q. I want to know if you can tell me, son, when the mailman was getting in the truck where David was. Was he on your side of the street or on the other side of the street? A. He was still on our side of the street.

"Q. He was on your side of the street. Then what did he do, run over to the truck, or what? A. Yes.

"Q. You say he had hold of the side on the running board? A. Yes."

From this testimony, we have the unanswered question as to whether David was on Donald's side of the street and ran over to the truck, or whether he was waiting by the truck all the while. Donald's later testimony on cross-examination does not clarify the situation, except that he repeated his earlier testimony that David was on the side of the truck, as this sequence shows:

"Q. Where did David come from to get on to that part (back right hand side of truck)? A. Well, he came around the back from the other side of the truck, I think.

"Q. He came around the back of the truck? A. Yes.

"Q. Now, was it the right rear wheel that ran over him or the left rear wheel? A. The right rear wheel that I saw.

"Q. Then when the truck stopped was he lying in back of the right rear wheel? A. No, he had sort of rolled when I saw him, as I was going back to the back yard.

"Q. You don't think it was the left rear wheel then? A. No."

The state of the evidence, then, is that we have physical evidence of David lying behind the left rear wheel following the accident. He got there, according to Donald, by rolling from where he had been hit by the right rear wheel, but, according to Smith, because the left wheel had gone over him. David's location before the truck was started remains somewhat of a mystery. Smith's testimony would preclude David's being ahead of, behind or under the car, and not within eyesight; Donald's would place David either on the right hand side of the truck, which is probable, or on the right hand side of the street, later to run over and be struck by the truck.

From this, more than one inference is permissible. The following could be true:

1. David was not in Smith's sight, ran over and was struck by the left rear wheel of the truck as it pulled out;

2. David was hanging on the right rear side of the truck, fell, and was run over by the right rear wheel;

3. David was on Donald's side of the street, then ran out and was struck by the right rear wheel;

4. Or a combination of the above, or some unexplained events, occurred, causing the accident.

Had the court set out in its findings of fact the evidence believed, or the reasons no negligence could be found, this discussion would be unnecessary. But the bare finding that, "It is not true that the said Smith negligently drove, operated, maintained or controlled the said mail truck, * * *" does not tell us whether the court believed all or part of the contradictory testimony of Donald Hubbard, who seemingly had an affinity for any leading question which he could answer with a "yes." Nor does it tell us which witnesses were believed, nor which facts were accepted as true. If the trial court accepted Donald Hubbard's testimony to the effect that David was hanging onto the right rear side of the truck and when it started David fell and was hit or run over by the truck, then the court should have held that Smith was negligent in not making a more careful search as to David's whereabouts before setting the machine in motion. In short, if the trial court was satisfied with Donald's testimony, then we are of the view that the finding of no negligence is clearly erroneous.

However, we are not able to determine from the findings of fact how the court

applied the California law to the case. As the record stands, we are unable to answer the only question on this appeal, that is, whether the court erred in finding that there was no negligence on the part of the defendant.

■ Findings of fact are required under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. The findings should be so explicit as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision. Kelley v. Everglades Drainage District, 1943, 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485; In re Rockford Baseball Club, 7 Cir., 1953, 201 F.2d 685; Maher v. Hendrickson, 7 Cir., 1951, 188 F.2d 700. In the Maher case, supra, at page 702, the court says:

> "The ultimate test as to the propriety of findings is whether they are sufficiently comprehensive to provide a basis for decision and supported by the evidence."

■ The findings in this case provide no such understanding and give no hint as to the factual basis for the ultimate conclusion. This court is not the trier of facts, nor does it substitute its own judgment for that of the trial court. Clarke Hybrid Corn Co. v. Stratton Grain Co., 8 Cir., 1954, 214 F.2d 7; J. P. (Bum) Gibbins, Inc. v. Utah Home Fire Ins. Co., 10 Cir., 1953, 202 F.2d 469; United States v. Beatty, 8 Cir., 1951, 192 F.2d 945; Noland v. Buffalo Ins. Co., 8 Cir., 1950, 181 F.2d 735.

■ In a case where the necessary findings are lacking on the appeal, the court does not dismiss the appeal, but vacates the judgment and remands the case to the district court for appropriate findings of fact. Kelley v. Everglades Drainage District, supra; United States v. Trubow, 9 Cir., 1952, 196 F.2d 161; Steccone v. Morse-Starrett Products Co., 9 Cir., 1951, 191 F.2d 197; Waialua Agr. Co. v. Maneja, 9 Cir., 1949, 178 F.2d 603, certiorari denied, 339 U.S. 920, 70 S.Ct. 622, 94 L.Ed. 1344.

The judgment in favor of the defendant is vacated and the cause remanded to the district court for the purpose of making appropriate findings of fact in the light of this opinion. If this cannot be done, then the judgment is reversed and remanded for a new trial.

CHAMBERS, Circuit Judge (concurring).

It seems to me that the probability here is that the trial judge did not think he could rely on the testimony of Donald Hubbard. I cannot agree to an outright reversal of the case. I might be inclined to affirm the judgment as rendered if I had support from my colleagues. Under the circumstances, believing that Judge WIIG'S solution is a reasonable one, I concur with him. Apparently all three of us have the same view of the California rules of negligence affecting this case.

HEALY, Circuit Judge (dissenting).

I would reverse the judgment on the ground that the trial court's finding of no negligence is contrary to the evidence and is thus clearly erroneous. This disposition of the appeal would necessitate a remand for the purpose only of determining the amount of appellant's damages, a determination that can readily and promptly be made on the basis of the existing record.

The holding of my associates is that if the trial judge believed the testimony of the only eyewitness, Donald Hubbard, then his finding of no negligence would be clearly erroneous. I experience no difficulty in agreeing with that holding, but I do have trouble with the "iffy" qualification it embodies. To me the record affords no ground for believing that the judge discredited Donald's account of the occurrence. Donald was summoned as a witness by the United States, was interrogated by its counsel, and testified on its behalf. In effect, the government vouched for him. In its brief on this appeal the government relies entirely on Donald's testimony as supporting its claim that the finding of no negligence was correct and should be allowed to

stand. Its brief summarizes Donald's testimony, with appropriate references to the record, in the following language:

"The only eyewitness to the accident, Donald Hubbard, testified that he saw David Irish hanging on to the right side of the truck just in front of the back wheel. That as the truck started David fell down and the wheel rolled over him. That after the right wheel ran over David Irish, he rolled and was not lying in back of the right rear wheel. There is no testimony to refute the eyewitness' account that the right rear wheel ran over David Irish. The driver stated that he thought, because of the jolt, that it was the left rear wheel that ran over David Irish, although in all probability it might have been the right wheel. As any operator of a motor vehicle has experienced, it is most difficult to tell by feel which of the rear wheels of his vehicle has run over an object if such object was not observed. Thus, the testimony of the eyewitness, Donald Hubbard is unrefuted. It is to be thus noted that David Irish was out in the street on the right hand side of the truck and thereby on the side opposite to that upon which the driver entered."

On the basis of this summary the government insists here, as doubtless it did below, that its postman was free of negligence in driving off as he did, inasmuch as the little Irish child was clinging to the right side of the mail truck in a position where he could not be seen by the driver when the latter returned to the truck. Presumably the district judge was persuaded by this argument and accordingly made his finding of no negligence. To me, our problem is as simple as that.

The government's summary accurately reflects Donald's account of the occurrence as it appears in the record. However, I do not at all agree with the government's argument on the legal point that the driver exercised due care in the circumstances. The California decisional law is all to the contrary. Apparently my associates take the same position. They say: "If the trial court accepted Donald Hubbard's testimony to the effect that David was hanging onto the right rear side of the truck and when it started David fell and was hit or run over by the truck, then the court should have held that Smith was negligent in not making a more careful search as to David's whereabouts before setting the machine in motion. In short, if the trial court was satisfied with Donald's testimony, then we are of the view that the finding of no negligence is clearly erroneous."

But my brothers appear to have become lost in a search for difficulties which the record does not in reality present. They say, "we have the unanswered question as to whether David was on Donald's side of the street and ran over to the truck, or whether he was waiting by the truck all the while." Yet in their holding above quoted they recognize that Donald's testimony, if accepted, gives the answer to that "unanswered" question. Thus the so-called unanswered question appears to relate, not to the sufficiency of Donald's testimony, but rather to some doubt as to whether or not the judge believed it.

I desire not to be unfair with my associates. While there is no apparent reason to believe that the judge discredited Donald's testimony, the record does afford grounds for surmising that the judge misunderstood what the boy was trying to tell him. Midway of Donald's testimony the judge took him in hand and posed leading and suggestive questions to him, thereby putting in his mouth language obviously inconsistent with the whole tenor of the boy's account given both before and after the judge had taken over—at a time, so to speak, when the witness was on his own. An illustration of this is seen in an excerpt quoted in the majority opinion. The genesis of the judge's misunderstanding, if any there was, is to be found in an answer to a question earlier put to the boy in the course of his examination by the United

States attorney. I quote from the record:

"Q. Now, before the truck left did you see little David? A. Yes, I did.

"Q. Just tell us where little David was and what happened? A. Well, he was on the side of the street, on the side of the truck that our house was on, and the truck started to turn out so it could miss the Carters' car, and David fell down and the wheel rolled over him.

"Q. Now, Donald, when you saw David you say he was by the truck? A. Yes.

"Q. Was he near the front wheel of the truck or was he near the back wheel of the truck? A. Well, he was near the back wheel.

"Q. Now, do you remember the truck had a door on it? A. Yes.

"Q. Where was he with relation to the door?

\* \* \* \* \* \*

"A. Between the door and the wheel."

It will be noticed that in the boy's answer to the second question he misspoke in referring to "the side of the street," and immediately corrected himself by saying the child was "on the side of the truck that our house was on." I quote the testimony at some length primarily to indicate how and where the possible misunderstanding of the trial judge arose. But the excerpt is helpful for other purposes as well. In commenting on this witness, the majority opinion states that "his testimony leaves much to be desired in the way of clarity." However, the passage above is typical of the boy's testimony almost throughout, and to me it indicates a clarity of thought and expression beyond that of the generality even of adult witnesses.

It seems to me that the duty of this court is clear. It should *decide* the litigation, not prolong it indefinitely on speculative considerations. If we are satisfied, as we appear to be, that on the basis of the only eyewitness' testimony negligence on the part of the government's agent was shown, then we should reverse and remand merely for the assessment of damages. The disposition of the case ordered by the majority will in all likelihood result in a second trial, very probably before a different judge, with all the delay and expense necessarily attendant upon such procedure. This accident occurred in March of 1952 and the judgment in favor of the United States was entered in July 1953. Two years have since elapsed. We can not hope that on a second trial a clearer record than the one presently before us will emerge, or even a record half so clear as this one is. With the passage of so long a time memories of the facts concerning this tragic incident will fade, witnesses may be dispersed or rendered unavailable through death or for other reasons, and thus once more the adage that "justice delayed is justice denied" may well find confirmation.