David **FLETCHER**, d/b/a Alaska Electric Company, Appellant,

v.

**TRADEMARK CONSTRUCTION, INC.**, an Alaska corporation, and United Pacific Insurance Company, a Pennsylvania corporation, Appellees.

No. S–10609.

Supreme Court of Alaska.

Dec. 5, 2003.

Joe P. Josephson, Josephson & Associates, P.C., Anchorage, for Appellant.

William K. Renno and Christine V. Williams, Oles Morrison Rinker & Baker LLP, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Alaska Electric Company appeals the superior court's dismissal of its contract action against Trademark Construction, contending that the court made insufficient findings of fact and conclusions of law when it dismissed the case under Alaska Rule of Civil Procedure 41(b) for failure to prove damages with sufficient certainty. Alaska Electric also contends that the trial court made various errors in its application of Civil Rule 41(b). Because the superior court's findings of fact are sufficient to indicate the legal and factual bases for its ruling, and because its interpretation of Civil Rule 41(b) was proper, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Appellee Trademark Construction entered into a contract with the State of Alaska to renovate the seventh and eighth floors of the Bank of America Center in Anchorage in December 1998. Trademark's successful bid included a subcontract bid of $74,724 for electrical work by appellant Alaska Electric. The general contract called for the work to be completed by January 31, 1999. The subcontract specified that time was of the essence, and that if changes or additional work were ordered by the state, Alaska Electric would have to obtain a written order from Trademark specifying and approving the work. The subcontract also governed how costs would be proved if the contract was changed:

> 6.1.2 In the event that [Trademark], or [the State of Alaska] shall order changes in Subcontract work, or order additional work, the Subcontractor shall furnish a price breakdown with his proposal in connection with the change order, itemized as required by [Trademark], or the [State of Alaska]. Unless otherwise directed, the breakdown shall be in sufficient detail to permit an analysis of all material, labor, equipment, and overhead costs as well as profit, and shall cover all work involved to accomplish the change, whether deleted, added, or changed.

Based on its certified payroll records, it appears that Trademark worked on the project from approximately December 28, 1998 to March 6, 1999. Various changes were made to the project, and the parties initially sought to authorize every change.

On December 22, 1998 the state issued drawings and a list of changes known as "Revision No. 2," which made various changes, additions, and deletions to the original project. The parties submitted to the state an initial proposal of $40,824 to cover the extra electrical subcontract work on January 8, 1999; in a January 25 meeting between the parties and the state, this was reduced verbally to $24,096 because the state decided that the initial proposal had included work not required by Revision No. 2. The state requested further substantiation of the details of the reduced proposal at that time, but none was provided. In a January 28, 1999 document apparently drafted by Alaska Electric, Trademark promised to compensate Alaska Electric for additional work including "[a]ll revisions of # 2 dated December 22, 1998, [a]ll extras associated with liebert units, ... i.e., additional work that was not clearly defined on the original prints ... plus all additionally incurred administrative services." In this document Trademark agreed "to pay Alaska Electric for all time and materials expended in completing this work, plus profit." On March 30, 1999 Alaska Electric sent an invoice to Trademark totaling $92,835 for labor alone on the additional parts of the contract. Trademark demurred, and attorneys for the parties worked for some time to try to resolve the dispute. By March of 2001 Alaska Electric's final invoice for labor and materials reached $154,475; with profit and interest, its final bill totaled $230,476.

### B. Proceedings

Alaska Electric filed suit against Trademark in September 2000, alleging that Trademark owed at least $200,000 on the unpaid "extra" and revised parts of the contract, and also alleging business damage, a claim that was later dismissed. A bench trial commenced before Superior Court Judge Peter A. Michalski in early December 2001, and plaintiff Alaska Electric called two witnesses: David Fletcher, the head of the business and negotiator of the above contracts, and Terrance Hix, a volunteer data manager at the Alaska Electric office.

#### 1. Evidence at trial

Fletcher and Hix testified extensively about the project and its expenses and explained numerous documents relating to their labor and materials costs. Three exhibits and one handwritten chart were especially important at trial. The first was plaintiff's Exhibit 10. This was the certified payroll for the entire project submitted by Alaska Electric to the Alaska Department of Labor, which Hix created from time cards filled out by foremen at the job site. The certified

payroll documented regular and overtime hours worked, hourly pay rates, and the type of benefits set by the union, although not the union benefits themselves. The certified payroll did not distinguish between hours worked on the contents of the original contract and hours worked to fulfill "extra" or "Revision No. 2" requirements.

The second important exhibit was plaintiff's Exhibit 59. This was a spreadsheet that purported to differentiate between hours worked on the original contract and hours worked on the additional and Revision No. 2 requirements. Hix prepared this spreadsheet during the completion of the project partly from time cards completed by foremen at the job site and partly on the basis of when the work was completed. "Work order numbers" on the spreadsheet reflected different job codes assigned by Fletcher and Hix to the two sets of contracts. The final row of the spreadsheet totaled the total regular and overtime hours worked on the two aspects of the project. On cross-examination, the witnesses testified that the foremen who filled out the time cards had not always been provided with the project codes that differentiated between work on the original contract and work on the revisions, and that not all of the time cards contained those differentiated codes. There was also testimony that this exhibit listed more work hours for certain workers in certain weeks than could be substantiated from the time cards.

The third important exhibit was plaintiff's Exhibit 43. This was also a spreadsheet, and it was created by Hix and Fletcher during February 1999 for the purpose of determining changes in materials needed as a result of the revisions and changes to the original contract. Pricing for the materials was not included. Although the spreadsheet included a "manhours" component for every change, these figures were only Fletcher's estimates as to how much time each job would take.

The fourth important document was a chart compiled by Fletcher in the courtroom during the trial. Apparently this was how Alaska Electric sought to tie the additional hours from the exhibits described above to the amount of damages sought by Alaska Electric. Fletcher testified that one week before trial Hix had provided him with Quickbooks software that showed that his total labor costs for the contract, including gross wages and benefits paid to the union, totaled $117,656. This software had not been entered into evidence or viewed by Trademark. In order to determine how much of the labor costs had been incurred in the additional and second revision aspects of the contract, Fletcher interpreted the number of standard hours supposedly worked on the original contract, 635.5 hours as listed in Exhibit 54, as representing all of the time actually used to complete the work from the original bid. He assigned all 1,311 other hours, even the overtime originally attributed to completing work on the original contract, to the additional contract and revision. From this he concluded that roughly one-third of his labor costs could be attributed to the original subcontract and roughly two-thirds could be attributed to the revision. Presumably this would mean that two-thirds of $117,656 represented Alaska Electric's labor costs for the extra work and revision. This chart was not admitted into evidence.

## 2. Rule 41(b) motion for involuntary dismissal

At the close of the plaintiff's case, Trademark moved for involuntary dismissal under Alaska Rule of Civil Procedure 41(b).[1]

1. Alaska R. Civ. P. 41(b) provides:

**Involuntary Dismissal—Effect Thereof.** For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event that a motion is not granted, may move

for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then weigh the evidence, evaluate the credibility of witnesses and render judgment against the plaintiff even if the plaintiff has made out a prima facie case. Alternately, the court may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as pro-

Trademark alleged that the contract was a "design-build" contract in which Alaska Electric bore the risk of cost overruns, that Trademark had not authorized the extra work under the contract, and that Alaska Electric had failed to prove its actual damages. However, Trademark did admit that it owed Alaska Electric approximately $10,000 as a result of several change orders, and based that number on three prior change orders plus the state's estimates of the value of the changes in Revision No. 2.

Judge Michalski granted the motion for involuntary dismissal on December 12, 2001, ruling that Alaska Electric had not met its burden of proving by a preponderance of the evidence that any of its costs could be attributed to the change orders as opposed to overruns on the original subcontract. In particular, he found that the documentary evidence presented did not facially differentiate between materials purchased for the original contract and materials purchased as the result of the revisions, and that after three years the plaintiffs lacked sufficient recall to explain the difference credibly. On December 14 Judge Michalski entered supplemental written findings of fact, in which he further found that Alaska Electric's failure of record-keeping at the time of the contract had prejudiced its case. He found that the figures in Exhibit 59, which purported to keep track of which hours worked were for the base contract versus the revised contract, were arbitrary, and that Fletcher's figures for materials costs were unsubstantiated. Judge Michalski also stated that "[t]he mere fact that the bid included 635 hours and Alaska Electric Company used 1,946 hours does not lead to the conclusion that 1,311 hours were due to change orders." However, because Trademark had admitted to some

monetary obligations to Alaska Electric, he awarded $10,220 to Alaska Electric.

Alaska Electric appeals, seeking three types of relief. First, it asks us to direct the superior court to make more specific findings of fact and conclusions of law so that it may file an appeal on the merits. Second, Alaska Electric asks that the superior court be instructed to wait to make its findings under Civil Rule 41(b) until Trademark has presented its case, or to articulate in writing why it declines to do so. Third, Alaska Electric asks us to instruct the superior court that it is entitled in a Civil Rule 41(b) motion to view the evidence in the light most favorable to the non-moving party [2] and that it shall make written findings as to whether and why it chooses to do so. Because the superior court's findings of fact were adequate to communicate the legal and factual bases for its ruling, and because the superior court interpreted Civil Rule 41(b) correctly, we decline on all three counts.

### III. STANDARD OF REVIEW

We use our independent judgment when interpreting a civil rule.[3] We review decisions made under Civil Rule 41(b) for abuse of discretion.[4] We review the trial court's factual findings under the "clearly erroneous" standard, which is met only if we reach " 'a definite and firm conviction on the entire record that a mistake has been made, although there may be evidence to support the finding.' "[5]

### IV. DISCUSSION

#### A. Judge Michalski's Oral and Written Findings of Fact Were Sufficient To Indicate the Legal and Factual Bases for His Ruling.

Alaska Electric's primary complaint is that "the trial court's oral findings of fact, even as

---

vided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

2. Judge Michalski noted in his oral findings of fact that he weighed the evidence rather than viewing it in the plaintiff's favor.

3. *Ford v. Municipality of Anchorage,* 813 P.2d 654, 655 n. 2 (Alaska 1991).

4. *Farmer v. State,* 788 P.2d 43, 50 (Alaska 1990).

5. *Crittell v. Bingo,* 36 P.3d 634, 638 (Alaska 2001) (quoting *In re Estate of Kottke,* 6 P.3d 243, 245 (Alaska 2000) (quoting *Mathis v. Meyeres,* 574 P.2d 447, 449 (Alaska 1978))).

supplemented, are so general" that it cannot ask this court "to review each exhibit and all of the plaintiff's testimony in the case-in-chief to determine whether the court below erred in holding that the plaintiff's claim for damages was not clear enough to resist the defendant's Rule 41(b) motion." Alaska Electric argues that the trial court disregarded the facts "that Trademark promised to pay for work under change orders on a time and materials basis" and that Fletcher "described at length the work performed above and beyond the original contract." Alaska Electric also contends that Judge Michalski should have hired a special master to help him sort through the documents presented at trial in order to arrive at properly proven damages. Trademark responds that under *Merrill v. Merrill*[6] and *Roberts v. Brooks*[7] findings of fact and conclusions of law need only be "sufficient in quality and quantity to facilitate intelligent review on appeal."[8] Trademark argues that the bases of Judge Michalski's ruling are clear and that no special master was called for because the problem was the quality and presentation of Alaska Electric's evidence rather than the trial court's difficulty in understanding it.

▇▇▇ In *Merrill* we noted that findings of fact and conclusions of law are required by Civil Rule 52(a)[9] in order to promote precision in the trial judge's thinking, to establish issues for *res judicata* and estoppel purposes, and to aid the appellate court on review.[10] In regard to the latter, "it is the duty of the trial court by sufficiently detailed and explicit findings 'to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.' "[11] When the trial court dismisses a case on the merits under Rule 41(b), it must make findings of fact under Rule 52(a).[12] Oral findings can be sufficient to satisfy the rule.[13]

It is difficult to determine whether the superior court's findings of fact are "sufficient to facilitate intelligent review on appeal" when the appellant has not briefed us on its theory of appeal.[14] Nonetheless, Alaska Electric appears to challenge only the court's finding that it showed an "insufficient nexus" between any given hours worked or materials purchased and the revisions to the contract. The factual findings that led Judge Michalski to this conclusion are clear: he found that Fletcher was unable to testify as to the cost of materials relating to the change orders; that the documents presented did not provide a basis for distinguishing between base and revised materials costs; that the classification of hours worked on the project as "base" or "extra" in Exhibit 59 was arbitrary; and that no evidence supported Alaska Electric's assumption that all hours not budgeted for in the base contract bid must have been expended as the result of additions and revisions to the contract. These findings are sufficiently detailed to

6. 368 P.2d 546, 548 (Alaska 1962).

7. 649 P.2d 710, 711 (Alaska 1982).

8. *Id.* at 711; *see also Merrill,* 368 P.2d at 548.

9. Alaska R. Civ. P. 52(a) provides in relevant part:

(a) In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and judgment shall be entered pursuant to Rule 58.... Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court.... Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).

10. *Merrill,* 368 P.2d at 548.

11. *Id.* (quoting *Irish v. United States,* 225 F.2d 3, 8 (9th Cir.1955)).

12. *Winn v. Mannhalter,* 708 P.2d 444, 451 (Alaska 1985).

13. *Noey v. Bledsoe,* 978 P.2d 1264, 1275–76 (Alaska 1999).

14. By filing this request for more specific factual findings in the supreme court, Alaska Electric has exhausted its appeal as of right pursuant to Alaska Rule of Appellate Procedure 202(a) and AS 22.05.010(a) ("[A] party has only one appeal as a matter of right from an action or proceeding commenced in ... the superior court.").

allow us to understand the factual basis of Judge Michalski's ruling, especially as they relate to the following testimony: (1) Hix and Fletcher testified that they created job codes for the time cards that would help them distinguish between base and revised contract work, but did not inform some of the foremen who actually filled out the time cards of those codes, and some time cards contained no such codes; (2) the hours spreadsheet/Exhibit 59 contained more hours than the time cards did; (3) Fletcher arrived at his revised contract materials costs amounts by telling his attorney to calculate these amounts from documents which did not always relate only to the revisions and from documents that might have been counted more than once.

Alaska Electric does not appear to challenge the sufficiency of Judge Michalski's conclusions of law. The legal basis of the ruling was that "the proof of the damages related to any change orders [must be] sufficiently established for the court to grant judgment and that is the burden of the plaintiff," using a "preponderance of the evidence" standard. Although the court cited no cases it accurately stated Alaska contract law. We have held that:

> Although a contractor need not prove damages with mathematical precision, it may only recover those damages which it proves with reasonable certainty. *State v. Northwestern Constr.*, 741 P.2d 235, 237 (Alaska 1987). "Recovery of damages for a breach of contract is not allowed unless acceptable evidence demonstrates that the

damages claimed resulted from and were caused by the breach." *Boyajian v. United States*, 191 Ct.Cl. 233, 423 F.2d 1231, 1235 (1970).

> .... The contractor's failure to present any evidence demonstrating its increased costs justifies dismissal of its claims. *Id.* at 1235-36.[15]

The trial court's conclusions of law also required an underlying contract interpretation ruling. Alaska Electric appears to have argued at trial that Trademark unilaterally agreed to reimburse it for all costs resulting from any change to the base contract made by any party, whereas Trademark appears to have argued that only changes resulting from Revision No. 2 were at stake and that the subcontract required Alaska Electric to provide very specific proof "in sufficient detail to permit an analysis of all material, labor, equipment, and overhead costs." Based on his objection to the attribution of 1,311 labor hours to revisions to the contract, Judge Michalski must have rejected the "all costs" argument and concluded as a matter of law that only those changes in the contract attributable to revisions were compensable.[16] We therefore think that the legal basis of Judge Michalski's ruling is also sufficiently clear to facilitate review.

The findings did not fail to address any necessary points nor are they internally contradictory; the superior court simply found that Alaska Electric had failed to present evidence showing its damages with reasonable certainty. In such a situation ap-

---

15. *Fairbanks N. Star Borough v. Kandik Constr., Inc. & Assocs.*, 795 P.2d 793, 798–99 (Alaska 1990), *vacated in part on other grounds on reh'g by*, 823 P.2d 632 (Alaska 1991).

16. The subcontract demands proof "in sufficient detail to permit an analysis of all material, labor, equipment, and overhead costs." General contract law, in contrast, requires only a "reasonable basis" for the award; "[w]e will not require that a plaintiff in a contract suit present an accountant's balance sheet in order to substantiate his damages." *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 224 (Alaska 1978). Plaintiffs in general contract cases can prove damages through the "actual costs" method, the "jury verdict" method, or sometimes even the disfavored "total costs" method. *See Municipality of Anchorage v. Frank Coluccio Constr. Co.*,

826 P.2d 316, 324–25 (Alaska 1992) (defining "actual costs" method as adding up each expense incurred through breach; "jury verdict" method as allowing jury to consider actual cost data, estimates by experts, and calculations from similar projects; and "total cost" method as permissible only where (1) the nature of the losses makes it impossible or highly impracticable to determine damages with reasonable accuracy, (2) plaintiff's bid or estimate was realistic, (3) its actual costs were reasonable, and (4) it was not responsible for the added expenses); *Kandik Constr.*, 795 P.2d at 798 (defining "total cost" method of determining damages for breach as the difference between the original bid or estimate and the final cost). The trial court appears to have determined that none of the standards for using the total costs method was met.

pointment of a special master was not warranted.[17] We hold that Judge Michalski's findings of fact and conclusions of law are "sufficiently detailed and explicit findings 'to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.' "[18]

### B. The Trial Court Need Not Justify Its Decision To Rule on the Civil Rule 41(b) Motion at the Close of the Plaintiff's Evidence Rather Than at the Close of the Defendant's Evidence.

■ Civil Rule 41(b) provides that the trial court may rule immediately on a motion for involuntary dismissal under that rule, or alternatively "may decline to render any judgment until the close of all the evidence." Alaska Electric contends that a judge facing a Rule 41(b) motion should have to explain why he or she rules immediately instead of waiting until the close of all evidence, arguing that this would be helpful upon review. But the purpose of granting the trial court discretion as to when to decide a Rule 41(b) motion is to increase the trial court's flexibility in managing the case, not to increase its workload or provide additional points for appeal. Alaska has traditionally held a pragmatic view of Rule 41(b): "Where plaintiff's proof has failed in some aspect the motion should, of course, be granted. Where plaintiff's proof is overwhelming, application of the rule is made easy and the motion should be denied."[19] If the trial court refuses to delay ruling on a Rule 41(b) motion, it is because the plaintiff has failed to prove its

case for the reasons set out in the court's findings under Civil Rule 52(a). Nothing would be gained from an additional requirement that the trial court explain why it did not delay its ruling. We decline to hold that such an explanation is required under Civil Rule 41(b).

### C. The Trial Court May Not Construe the Evidence in the Plaintiff's Favor When Ruling on a Civil Rule 41(b) Motion.

Civil Rule 41(b) provides in part that upon a motion for involuntary dismissal, the trial court may weigh the evidence, evaluate the credibility of witnesses, and render judgment against the plaintiff even if the plaintiff has made out a prima facie case; alternatively the trial court may delay its ruling until the close of all evidence. Alaska Electric contends that the permissive language of Rule 41(b)—"may weigh the evidence"—leaves open the possibility that the judge may construe the evidence in the light most favorable to the plaintiff, similar to the standard for a directed verdict under Civil Rule 50(a) in jury-tried cases.[20] It asserts that the superior court erred in failing to recognize that it had the power to consider the evidence in the light most favorable to Alaska Electric. Alaska Electric admits that a memorandum of the Court Rules Attorney demonstrates that the Alaska Supreme Court in 1987[21] chose the current version of Civil Rule 41(b)—the court may "weigh the evidence ... even if the plaintiff has made out a prima facie case—over another version that would have explicitly required the trial court to

**17.** Generally, appointment of a special master pursuant to Civil Rule 53 should be reserved for cases in which (1) the issues are unusually complex or specialized; (2) discovery is particularly document-intensive; (3) resolving discovery disputes will be especially time-consuming; (4) the parties are particularly contentious or obstructionist; or (5) a master will promote a more speedy and economical determination of the case. *Peter v. Progressive Corp.*, 986 P.2d 865, 870 (Alaska 1999).

**18.** *Merrill v. Merrill*, 368 P.2d 546, 548 (Alaska 1962) (quoting *Irish v. United States*, 225 F.2d 3, 8 (9th Cir.1955)).

**19.** *Rogge v. Weaver*, 368 P.2d 810, 813 (Alaska 1962), *overruled on other grounds by* Alaska Supreme Court Order No. 798 (January 14, 1987), *cited with approval in* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2573.1, at 501 (2d ed.1994).

**20.** *See Howarth v. Pfeifer*, 423 P.2d 680, 682 (Alaska 1967) (holding that in determining motion for directed verdict, court views evidence in light most favorable to non-moving party).

**21.** Alaska Supreme Court Order No. 798 (January 14, 1987).

view all evidence in the light most favorable to the plaintiff."

■ The 1987 rule change overruled our former Civil Rule 41(b) requirement that the trial judge deny a motion to dismiss when the plaintiff has made an unimpeached prima facie case.[22] The change in the text of the rule brought it into compliance with the analogous federal rule,[23] about which WRIGHT & MILLER concludes that "[t]he trial judge is not to draw any special inferences in the nonmovant's favor nor concern itself with whether the nonmovant has made out a prima facie case."[24] We conclude that Judge Michalski did not err in refusing to view the evidence in the light most favorable to the plaintiff.

## V. CONCLUSION

Because Judge Michalski's findings of fact and conclusions of law provide sufficient details of the legal and factual bases of his ruling, and because there are no requirements that a trial court in ruling on a Rule 41(b) motion (1) explain why it declines to defer a decision until the close of all the evidence or (2) construe the evidence in the light most favorable to the non-moving party, we AFFIRM the decision of the superior court.

---

**22.** Before the 1987 amendment to the rule, *Rogge v. Weaver* required the trial court to deny a motion for involuntary dismissal when the plaintiff had made an unimpeached prima facie case. *Rogge,* 368 P.2d at 813.

**23.** FED.R.CIV.P. 52(c).

**24.** WRIGHT & MILLER, *supra* note 19, § 2573.1, at 497–98 (citation omitted). Even as early as 1987

when the changes to Civil Rule 41(b) were ordered, members of our court had already concluded that the effect of the new rule was to foreclose the possibility that the old light-most-favorable rule would continue to apply to Civil Rule 41(b) decisions. *Thomas v. Anchorage Tel. Util.,* 741 P.2d 618, 633–34 (Alaska 1987) (Matthews, J., concurring).