55 So.2d 541 (1951)
PREGER
v.
GOMORY et al.
Supreme Court of Florida, Division B.
December 11, 1951.
*542 George L. Knight, Miami, for appellant.
Blackwell, Walker & Gray, Miami, for appellees.
MATHEWS, Justice.
This is an action brought by the father of a minor child for damages because of the alleged wrongful death of the minor child, who was five and one-half years of age. It is alleged the death was caused by reason of an automobile accident which occurred in front of an apartment house in the City of Miami Beach. It is alleged that the child was a pedestrian on the street and that the death was caused by the joint negligence of four defendants.
William M. Gomory was the owner of a Cadillac automobile which was operated in a southerly direction on Byron Avenue by Patricia W. Davis. It is alleged that such operation was in a careless and negligent manner which caused the Cadillac to strike the minor child causing fatal injuries.
It is alleged that Sara H. Shulman was the owner of a Pontiac automobile which was operated by the defendant David L. Shulman with the knowledge and consent of Sara H. Shulman, and that while being so operated was parked on the west side of Byron Avenue facing north. It was alleged that this manner of parking was negligent because it violated Section 29 of Ordinance 258 of the City of Miami Beach, which reads as follows: "Section 29. Standing or Parking Close to Curb. (a) Except when necessary in obedience to traffic regulations or traffic signs or signals, the operator of a vehicle shall not stop, stand or park such vehicle in a roadway other than parallel with the edge of the roadway, on the right side of the street, heading the direction of traffic, and with the curbside wheels of the vehicle within one foot of the edge of the roadway, * * *."
It was further claimed that the Pontiac automobile was parked with the rear extending further into the street than the front and the parking in the manner described in violation of the ordinance was negligent and that such negligence was a contributing cause to the accident.
Pleas were filed consisting of the defenses of (1) general denial, (2) contributory negligence of Corey Bruce Preger, (3) contributory negligence of Samuel W. Preger.
At the close of the plaintiff's case the Court directed the entry of a verdict in favor of the defendants and final judgment was entered upon such verdict. Motion for new trial was filed and in due course denied.
There is no material conflict in the testimony. The child was five and one-half years of age and was very intelligent. The child was killed on the street in front of 6950 Byron Avenue in the City of Miami Beach. The child's family lived in the apartment house at that number. The accident happened at 6:00 o'clock in the evening, in broad daylight, when the weather was clear, and the pavement was dry. The pavement at this place is approximately 16 feet wide, the apartment was on a lot with a frontage of 50 feet on Byron Avenue. There was a cement and tile walk leading from the center of the lot to the street; the lot had a hibiscus hedge which could be seen through; along the north edge of the lot was a thick Australian pine hedge which was quite high.
The uncontradicted testimony shows that at the time of the accident the Pontiac was parked on the west side of Byron Avenue facing north. It was not parked exactly parallel with the edge of the roadway on the right side of the street heading in the direction of traffic and with the curb-side wheels of the vehicle within one foot of the *543 edge of the roadway. It is claimed that the violation of this ordinance constituted negligence which was a contributing factor to the accident and by reason of this contention the liability is attempted to be placed upon the Shulmans. Instead of the curb-side wheels of the vehicle being within one foot of the edge of the roadway the wheels were actually off of the pavement. The Pontiac was parked with approximately half of its width on the pavement. Patricia W. Davis testified that she noticed the Pontiac sedan, and there were two automobiles coming north meeting her and that the Pontiac blocked her way sufficiently so that she had to stop to let the north-bound cars get by. She could not see behind the parked Pontiac or behind a Ford, which was parked on the other side of the street. After the two north-bound cars passed, she started to go south again and, therefore, swung to her left so that she could avoid hitting the parked Pontiac. In passing the Pontiac she was going right down the middle of the road, the car was in first gear, shifted to second, and going about eight miles per hour. After she had passed the Pontiac she heard a slight bump. Upon hearing the bump she did not apply brakes but pulled the car to the side of the road and let the engine do the braking and the car stopped of its own accord without the application of brakes. The car stopped near a telephone pole about six feet south of the southern line of the lot. She did not know there had been an accident but stopped because Dr. Gomory, who was riding with her, was fussy about his car, and she knew he would like to see what had caused the noise. She did not at that time get out of the car but Dr. Gomory did. For all practical purposes Dr. Gomory's testimony corroborates that of Mrs. Davis, except that he testified that upon getting out of his automobile, he walked along the west side of the car and examined the same to see what had made the bump. He saw nothing and was about to get back into the car when glancing back upon the pavement he saw a child's body upon the roadway. This was the first time that Dr. Gomory had seen the child. Dr. Gomory stated the child was lying in the middle of the road with his head facing in an easterly direction and slightly to the south. He stated the child's head was to the east of an imaginary central line of Byron Avenue.
It is significant that no one saw this child prior to the accident. No one testified that the child was crossing the street from east to west or from west to east and no one knew where the child was when Mrs. Davis stopped the Cadillac behind the Pontiac. No one knew where the child was when the two cars met Mrs. Davis and passed her. No one saw either of these cars strike the child and no one saw the Cadillac strike the child.
We will first consider the case against the Shulmans. By no stretch of the imagination can liability be fixed upon the Shulmans for the death of this child because of any negligence on their part. In addition to the testimony hereinabove set forth, the investigating police officers testified that the Pontiac was parked as far as possible off the street and was approximately parallel with the west edge of the pavement and that only the two right wheels were on the pavement. There was no curbing on the edge of this pavement. It was jagged and uneven. The question of liability on the part of the Shulmans depends on whether or not, by reason of the fact that the Pontiac was headed north instead of south, it constitutes actionable negligence on their part. In Powers v. Standard Oil Company, 98 N.J.L. 730, 119 A. 273, 274, Id., 98 N.J.L. 893, 121 A. 926, the New Jersey Court held that the parking of an automobile on the wrong side of the street was not the proximate cause of injury to a child whose vision is thereby obscured and who attempted to pass behind the car and across the street, with the result that he was struck or run into by another automobile. The court said:
"* * * The fact that its reversed situation made its position upon the street at that point a violation of the traffic law, did not confer upon the truck either activity or force, so as to constitute it an active efficient instrumentality for harm. * * *
"In the case at bar it was unimportant whether the defendant's car rested legally *544 or illegally upon the street, since its obstruction to the vision of the crossing pedestrian, or to the driver of a moving car upon the roadway, would, under the testimony, be equally effective. In either event its impotence for harm or damage, as an innocuous, immobile instrumentality, must be manifest, since in both situations it simply presented a patent condition, and not an operating, efficient, or proximate cause, which can be said to contain by its activity, that potentiality for harm or damage, which furnishes the test upon which the rule of liability in this character of tort-feasance is predicated."
There is absolutely no proof of any causal connection between the parking of the Shulman car and the happening of the accident.
As to Dr. Gomory and Mrs. Davis, we do not find any proof of any actionable negligence on the part of either of them.
Mrs. Davis brought the Cadillac to a complete stop one car length north of the Pontiac on the west side of the street in order to let two north-bound cars pass. She then proceeded to approximately the center of this narrow street at a low rate of speed at about eight miles per hour in first gear and then to second gear on beyond the parked car on her right and past the entrance of the apartment house where the Pregers lived. The uncontradicted testimony shows that it was not until the car was past the entrance to the apartment that the defendants, Davis and Gomory, heard a thump toward the right rear of the vehicle. The Cadillac was stopped within a reasonable distance of from eight to ten feet south of the apartment entrance. The uncontradicted testimony is that neither of these defendants saw the child until after the car had stopped and Dr. Gomory got out of the car.
It is strongly contended that Mrs. Davis violated Sec. 53 of Ordinance No. 258 of the City of Miami Beach which reads as follows:
"Section 53. Signals on Starting or Turning. (a) the operator of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give a clearly audible signal by sounding the horn, and, whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section plainly visible to the driver of such other vehicle of the intention to make such movement."
It is contended that Mrs. Davis should have blown the horn when she started the car from behind the Pontiac and pulled into the center of the street. This ordinance only requires the blowing of the horn "if any pedestrian may be affected by such movement". No one saw the child or any other pedestrian and there was no duty to blow the horn unless the operator saw a pedestrian or was chargeable with notice that a pedestrian might be affected. The operator of an automobile is not chargeable with notice that pedestrians may be darting out in front of or behind parked automobiles in the middle of a city block.
The evidence submitted by the plaintiff wholly fails to present any evidence whatever to support a verdict for the plaintiff or to raise any reasonable inference or presumption of actionable negligence on the part of any of the defendants. In order for a jury to find either of the defendants guilty of actionable negligence it would be necessary to add possibility upon possibility, guess upon guess, inference upon inference, and presumption upon presumption. A verdict of a jury must be based upon something more substantial.
We have carefully considered all of the other assignments of error; such as, the admissibility of evidence, and we find no reversible error in any of them.
Affirmed.
SEBRING, C.J., and HOBSON and ROBERTS, JJ., concur.