58 So.2d 869 (1952)
MIAMI PAPER CO.
v.
JOHNSTON (Two Cases).
Supreme Court of Florida, en Banc.
May 2, 1952.
Rehearing Denied June 3, 1952.
*870 Dixon, DeJarnette & Bradford and A. Lee Bradford, all of Miami, for appellant.
E.F.P. Brigham, Burton M. Cohen, Miami, and Phillip Goldman, Tallahassee, for appellee.
TERRELL, Justice.
Robert M. Johnston, a minor twenty-three months old, was injured by a truck of Miami Paper Company. Two suits were brought to recover damages for the injury, one by the father in his own right and one by the father as next friend of the minor. Both suits were tried together, the defendant moved for an instructed verdict four times during the trial and for judgment non obstante veredicto at the conclusion of the trial, all of which were denied. The jury returned a verdict of $10,000 for the father and $25,000 for the child. Motions for new trial were denied and defendant appealed.
It is first contended that defendant's motion for an instructed verdict should have been granted because there was no showing of negligence on the part of defendant and being so, there was nothing for submission to the jury.
There is very little dispute about the material facts. It is shown that the truck was in charge of and was driven to Tropics Trailer Park by an agent of defendant to make deliveries, that he parked the truck on the West side of the private driveway facing West and made delivery to the Park store room as was his custom, that the trailer park was a private enterprise and many children lived and played about the park, that more than one hundred children were at the park at the time the truck was parked and some of them were playing near it, that when the driver made his delivery he proceeded to the rear of the truck, looked down the right-hand side and saw nothing. He then walked along the left side of the truck and saw nothing, he mounted the driver's seat but did not look in front of the truck. He started forward without blowing his horn. When he had proceeded from three to five feet he felt a thud. He stopped the truck instantly and found the child lying three or four feet from it about midway between the front and rear wheels seriously injured. The right leg was broken below the knee, the body was badly bruised, the skin was torn from the right side but no one could tell how it got there or where it came from.
Under this state of facts, we think the question of negligence was properly submitted to the jury and whether or not the driver of the truck was negligent in not looking in front of the truck before he started was a jury question. He was on notice that many children lived and played about the trailer park, that it was a private enterprise and catered to families and that children were playing near when he parked the truck. It is a matter of common knowledge that small children are erratic and unpredictable, that they are liable to take off at any time and in any direction with no concern whatever for their own safety. The drivers of motor vehicles are charged with knowledge of their behavior and are expected to govern themselves accordingly when parking or driving about school grounds, recreation parks, residential communities, trailer parks and other places inhabited by or frequented by children. They are expected to anticipate children about such places and whether or not they exercise reasonable care in doing so is a question for the jury.
*871 The general rule supported by a wealth of authority is that one manipulating a motor vehicle on the highway, whether backing, starting, or proceeding ahead, must exercise reasonable care, circumstances being the guide as to what constitutes reasonable care. If he has reason to think that children may be near, reasonable caution requires that he be on the lookout for them. Gorzeman v. Artz, 13 Cal. App.2d 660, 57 P.2d 550; Jackson v. State Farm Mutual Automobile Insurance Co., La. App., 32 So.2d 52; Cunningham v. Sublett's Administrator, 306 Ky. 701, 208 S.W.2d 509; Frederiksen v. Costner, 99 Cal. App.2d 453, 221 P.2d 1008; Jacklich v. Starks, 338 Ill. App. 433, 87 N.E.2d 802; 60 C.J.S., Motor Vehicles, § 396(d), p. 972.
Under the state of facts detailed the jury found against appellant and the trial court refused to set the verdict aside. A careful examination of the record reveals nothing that would warrant us in reversing his judgment on this point.
The only other question urged for determination challenges the verdict and judgment for being excessive.
The judgment for the father was $10,000 and that for the child was $25,000. The basis for the charge of excessiveness is that the child was a mongoloid child, twenty-three months old, that he should have been committed to an institution, that he will never attain a mental development greater than a normal child of six years, that he will never be able to perform anything more than common labor, and that it is not certain that his injury is permanent.
The evidence shows that both bones of the right leg were broken below the knee. It also shows that he was in a cast for weeks, that he has a leg deformity, and walks with a limp as a result of his injury, that one leg is shorter than the other, that his right knee is unstable, better known as a knock knee, that he is required to wear built up shoes, that his joint surfaces have been damaged to such extent that in years to come he will be afflicted with an arthritic condition, that a contemplated operation might improve some of his troubles but as to others its result would be surely speculative.
There is no dispute about the child being a mongoloid, the hall mark of which is a brain deficiency less noticeable for abnormality in the shape of the head than its kindred mental defect microcephaly. It is said that the brain of such a child may reveal few if any obvious defects but intellectual performance is sluggish and rarely rises above the imbecile level. Some psychologists pronounce it a fault in development and regard it as a sporadic accident brought about by faulty growth of the embryo. It is not a family trait but may occur in any family. The evidence shows that the average mongoloid child may be expected to live as long as the normal child, that the life expectancy of the child in question is 55 years and that despite their mental deficiency, such children may acquire sufficient skill to earn a living at menial or common labor not requiring normal mentality to perform.
In a case like this the criteria for measuring damages are age, life expectancy, state of mental and physical health before and after the accident, effect of the injuries on health, bodily pain, mental anguish and disability caused by the injury and to what extent the injury hinders him in leading such a normal life as he is competent to lead and to what extent the injury incapacited him from engaging in such pursuits as he is capable. When these elements are considered in the light of the record we cannot say that the verdict of the jury was excessive as to the child.
As to the father, the elements of damage are different and the evidence is not so conclusive as to what he suffered. Wilkie v. Roberts, 91 Fla. 1064, 109 So. 225. It is shown that he had expenses resulting from the accident of $435. It is also shown that an operation costing not exceeding $1,500 might be of decided advantage. As to other damage the evidence is not satisfactory. In his reply brief, appellant contends that Preger v. Gomory, Fla., 55 So.2d 541, is conclusive of this case but the only similarity we find in the two *872 cases is that no one knew where the child came from when injured in either case. All other facts were different and there was ample support for the finding of negligence in the present case.
It follows that the judgment must be and is hereby affirmed as to the minor child. As to the father it is reversed for a new trial on the question of damages only.
Affirmed in part, reversed in part.
SEBRING, C.J., and CHAPMAN, HOBSON and MATHEWS, JJ., concur.
THOMAS, J., dissents.
ROBERTS, J., not participating.
THOMAS, Justice (dissenting).
I think the judgment should be reversed outright.