Jesse **BENNETT**, Plaintiff,

v.

**UNITED STATES** of America,
Defendant.

Civ. No. 10996.

United States District Court
S. D. Florida,
Miami Division.

July 13, 1962.

Sams, Anderson, Alper & Spencer, Miami, Fla., for plaintiff.

Edward F. Boardman, U. S. Atty., Miami, Fla., for United States, Lloyd Bates, Jr., Asst. U. S. Atty., Miami, Fla., of counsel.

DYER, District Judge.

Plaintiff sued the Defendant under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671 et seq., for the wrongful death of his minor son, ROBERT K. BENNETT.

On July 12, 1960, HOWARD OLMSTEAD, a temporary substitute mail carrier in the employ of the United States Post Office Department, was delivering mail along a route which included the residence of the Plaintiff in the unincorporated area of Broward County, Florida, designated as 235 S. W. 10th Court, Pompano Beach. OLMSTEAD had delivered mail along this route for about four weeks previously. He knew that the Bennetts had small children and that there were a number of other children in the neighborhood ranging in ages from two to five, who played in the front yards and often picked up the mail from the rural delivery type boxes.

OLMSTEAD was driving a United States Post Office three-quarter ton mail truck of the type customarily used throughout the country for such purpose. The truck was rectangular in shape, except the front which sloped slightly forward from the top to the bumper. It had a right hand drive with sliding doors on both sides of the truck extending from the floor to the top. A windshield extended across the front and a window was located on each front side extending from the windshield to the front door posts. The bottom of the windshield was five feet, six inches from the level of the ground. Between the steering wheel and the windshield was an area approximately thirty inches in width used for the sorting or counting of mail. This area was lower than the bottom of the windshield.

The Bennett home was located in Lyons Park Subdivision, a residential area, and the mail boxes serving the homes were on roadside posts. S. W. Tenth Court had a dedicated 50 foot right of way, a portion of which was paved, the remaining portion being grass covered. The mail box post at the Bennett home was 5 feet 6 inches north of the paved portion of S. W. 10th Court and 10 feet 10 inches east of the east edge of the Bennett driveway, which was also paved.

At approximately eleven o'clock on the morning of July 12, 1960, OLMSTEAD proceeded southerly on S. W. 2nd Avenue to its intersection with S. W. 10th Court, where he made a right turn to

proceed in a westerly direction on S. W. 10th Court. After making the turn he made one delivery of mail and then proceeded to the Bennett mail box. As he was approaching the Bennett box he noticed two boys approximately eight years of age running toward the mail box from his right front. They were later identified as Stephen Bennett and Steven Quinn. They were the only children that he observed, and they were about 3 to 5 feet from the box when he first saw them.

OLMSTEAD stopped his truck with the right hand door about 1 foot from the mail box. He delivered the mail while in a seated position with the right hand door open. At this time the left hand door was also open.

OLMSTEAD remained at the Bennett box for approximately one minute, during which time the two boys took the mail from the box and were playfully fighting with one another over possession of it. OLMSTEAD, having left the motor of his truck running, told the two boys to watch their step, that he was leaving. Prior to putting his truck in forward motion, OLMSTEAD looked through the windshield and the open left and right-hand doors. He had a clear view along the right side of his truck. He saw no traffic nor anything in front of him and started to go forward. After proceeding approximately 8 feet and hearing a cry, he looked back and saw a child lying in the Bennett driveway and immediately stopped his truck. The child, ROBERT BENNETT, was severely injured, apparently as the result of the right rear wheel of the truck passing over him. Prior to this OLMSTEAD had not seen Robert at any time. He immediately took Robert to a nearby hospital, where he was pronounced dead.

At the time of this accident Robert was three years of age and was 42 inches in height.

Approximately one-half hour before the accident Robert, Stephen Bennett and Steven Quinn had been with a group of children in the Quinn home located directly across the street from the Bennett home. Within five minutes of the accident Robert had returned to his home. The actions of Robert immediately prior to the accident are unascertainable, without engaging in guess or speculation. As related above, within five minutes prior to the accident Robert was in his own home. Yet Steven Quinn's version from the witness stand was that he, Stephen and Robert Bennett ran across the street in front of the truck and, while the two older boys were wrestling for the mail, Robert leaned in the right front door of the truck, engaged OLMSTEAD in conversation, and while he was in this position the truck started up and Robert was somehow thrown under the right wheel, although Steven Quinn did not actually see how this occurred. On the day of the accident, however, Steven Quinn told the highway patrol investigating officer that as the truck started up Robert ran across the street in front of the truck down the right-hand side, and fell under the rear wheel.

To sustain liability in this case Plaintiff relies heavily upon Miami Paper Co. v. Johnston, S.C.Fla.1952, 58 So.2d 869, and Coast Cities Coaches, Inc., et al. v. Paul C. Donat, 3 D.C.A.Fla.1958, 106 So.2d 593. These cases stand for the proposition (Miami Paper Co. v. Johnston, supra, at 870 of 58 So.2d) that:

"It is a matter of common knowledge that small children are erratic and unpredictable, that they are liable to take off at any time and in any direction with no concern whatever for their own safety. The drivers of motor vehicles are charged with knowledge of their behavior and are expected to govern themselves accordingly when parking or driving about school grounds, recreation parks, residential communities, trailer parks and other places inhabited by or frequented by children. They are expected to anticipate children about such places and whether or not they exercise reasonable care in doing so is a question for the jury", (or for the

Court in an action under the Federal Tort Claims Act).

Although upholding a judgment for the Plaintiff in Budgen v. Brady, 1 D.C. A.Fla.App., 1958, 103 So.2d 672, where the injured child was conspicuously attired and was struck on a sidewalk which abutted the entrance to a private driveway, the Court observed at page 675:

"Nor does it (i. e., this case) fall within that class of cases wherein a driver causes injury to a child who has by some unknown means come to be in the street and, notwithstanding due care, is discovered only after being injured. There, as in cases of sudden emergency, the most diligent driver has no opportunity to avoid the tragedy." Citing Preger v. Gomory, S.C.Fla.1951, 55 So.2d 541.

In Preger the driver did not see the child until after the accident had occurred, and precisely how she came in contact with the vehicle and how she was killed was unexplained. The Court in affirming for the Defendant concluded at page 544 of 55 So.2d that:

"The evidence submitted by the plaintiff wholly fails to present any evidence whatever to support a verdict for the plaintiff or to raise any reasonable inference or presumption of actionable negligence on the part of any of the defendants. In order for a jury to find either of the defendants guilty of actionable negligence it would be necessary to add possibility upon possibility, guess upon guess, inference upon inference, and presumption upon presumption."

Likewise in this case, while the blood marks on the right rear tire of the truck would indicate that in *some* manner Robert fell or was caused to fall under that wheel, there is no evidence either as to what caused the occurrence or that it resulted from any negligence of OLMSTEAD.

My views can be succinctly summarized by paraphrasing the penultimate paragraph of the opinion of the United States Court of Appeals for the Eighth Circuit in the case of Barryhill v. United States, 8 Cir., 1962, 300 F.2d 690, 696 (a case that is strikingly similar factually) as follows:

MR. OLMSTEAD, the driver in this case, lived up to the standard of care required of him. The precautions he took were all that could be reasonably required. There was no evidence that he had any grounds for believing that Robert Bennett might be, or would be, in any position near the truck which would involve danger to him. His death was most unfortunate. It was caused by an accident.

It follows that judgment should be entered for the Defendant.

This opinion will serve as the Court's Findings of Fact and Conclusions of Law, Rule 52(a), Federal Rules of Civil Procedure.