[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11438

_____

D.C. Docket No. 0:15-cv-61953-JEM

TIMOTHY S. O'DONNELL,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 6, 2018)

Before WILLIAM PRYOR, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Timothy S. O'Donnell appeals the district court's grant of summary judgment to the United States in his Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq., action against the United States, based on injuries he received as a result of a United States Postal Service (USPS) employee's alleged negligence. O'Donnell asserts the district court erred in concluding that USPS did not owe him a legal duty of care, and in determining that even if USPS owed him a legal duty, proximate cause was lacking. After review and with the benefit of oral argument, we reverse the district court's grant of summary judgment and remand for further proceedings.[1]

## I.  BACKGROUND

On December 5, 2014, O'Donnell was pressure cleaning the driveway of a house located at 4310 SW 82nd Way in Davie, Florida. O'Donnell was working with Miracle Pressure Cleaning, Inc. (Miracle). The pressure cleaning equipment O'Donnell was using, which included two motors, reels with hoses, and water tanks, was on a trailer attached to a pickup truck. The pickup truck and trailer were parked on SW 82nd Way, in front of the house where O'Donnell was working. The back of the trailer was at the edge of one side of the house's driveway. The house's mailbox was at the edge of the other side of the driveway.

---

[1] We GRANT O'Donnell's motion to supplement the record on appeal with the four pictures of the scene on the day of the accident referenced in the depositions of O'Donnell, Richard Curtin, and Ikramul Haq. *See Ross v. Kemp*, 785 F.2d 1467, 1472 (11th Cir. 1986).

O'Donnell testified that before he started working, he unreeled the entire length of pressure washing hoses (which he estimated to be between 150 and 200 feet) from the trailer and stacked the hoses behind the trailer in the road. There were at least two hoses connected together and stacked behind the trailer. There were no cones or barricades around the hoses.

Miracle's owner and president, Richard Curtin, testified that hoses from two spools on the trailer were unreeled for the job, and that each hose was 200 feet long for a total of 400 feet of hose. Curtin also testified that ninety percent of the 400 feet of hose was behind the trailer in a pile in the road occupying about four square feet of space behind the trailer.

After stacking the hoses behind the trailer, O'Donnell pulled a portion of one hose up the driveway and connected a surface cleaner to the end of that hose. The other end of the hose was connected to the pressure cleaning pump on the trailer. O'Donnell testified he needed approximately 40 to 48 total feet of hose to reach from the edge of the driveway to the garage door of the house, and to have some slack hose to allow him to move the surface cleaner from side-to-side in order to clean the driveway. Even though he needed a total of 40 to 48 feet of hose for the job, the two hoses he was using were not disconnected from one another because the entire length of the hoses is needed for larger jobs.

3

O'Donnell began pressure cleaning the driveway by facing the garage door of the house with the surface cleaner between him and the garage door. He moved from side-to-side pressure cleaning the driveway in rows. O'Donnell positioned the pressure cleaning hoses in the driveway in a loop and placed his right foot in the middle of the loop so that he could move the hoses backward and out of the way as he continued to clean the driveway. After completing a row, O'Donnell moved backwards and slid the hoses down the driveway away from the garage with his right foot.

After O'Donnell began pressure cleaning the driveway, a USPS letter carrier, Ikramul Haq, arrived at the house. Curtin testified that Haq parked with two of his tires on the hoses.[2] Haq walked in between the stack of hoses and the trailer to deliver a package to the front of the house. When O'Donnell saw Haq approaching the front door to deliver the package, he turned the valve off on the surface cleaner to prevent the water from spraying Haq. After Haq delivered the package and was almost back to his mail truck, O'Donnell turned the valve back on and continued to pressure clean the driveway while facing the garage door. Haq

---

[2] O'Donnell testified Haq parked his mail truck behind the stack of hoses, but not on the stack of hoses. However, for purposes of summary judgment we credit the version of the facts most favorable to O'Donnell, which is that Haq actually parked two tires on the hoses. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("Nevertheless, for summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the plaintiff.").

testified that he saw O'Donnell "washing" the driveway in front of the garage before he drove away from the house.

Curtin testified that when Haq returned to the mail truck, he backed up enough to get around the trailer then "tore off like a bat out of hell." O'Donnell was facing the garage door moving the hose loop with his foot when he felt the hose loop tighten around his right ankle. When the hoses tightened around his ankle, he fell forward onto his stomach. O'Donnell was dragged down the wet driveway feet-first for approximately 40 feet, and ultimately came to a stop behind the trailer. Curtin saw the hoses being pulled by the truck and saw O'Donnell being dragged down the driveway by the hoses caught on the mail truck. Haq stopped when Curtin and an unidentified neighbor yelled at him to do so.

Following the incident, O'Donnell was transported to Memorial Hospital by ambulance for treatment of a fractured right ankle. O'Donnell's injuries ultimately required surgery within a month of the accident, and at the time of his deposition, O'Donnell was awaiting another surgery on his right ankle. O'Donnell now uses a wheelchair or walker when leaving his house as a result of his injuries.

O'Donnell sued the United States for negligence pursuant to the FTCA, contending that Haq ran over the pressure cleaning hoses that were in the road, and that the hoses or a portion thereof caught on something underneath the mail truck causing O'Donnell to be dragged down the driveway. The district court entered

5

summary judgment in favor of the United States, finding O'Donnell could not establish a legal duty as a matter of law, as it was not foreseeable USPS's conduct would include a zone of risk that would encompass O'Donnell standing at least 40 feet away from the USPS mail truck, and it was highly unlikely that O'Donnell's same type of injury could be expected again. "One could not reasonably foresee that Haq's act of running over the hoses—which were placed in the road and not cordoned off by any cones—would result in a loop of the hose tightening around O'Donnell's ankle and dragging him down the driveway."

The district court also determined that even assuming a duty existed and was breached, proximate cause was lacking. Even if it was foreseeable that running over the hoses would cause them to become caught on something underneath the mail truck, the relevant question was whether it was foreseeable that O'Donnell would fracture his ankle after the hose tightened around it and dragged him down the driveway. The district court concluded it was a freak accident that could not support proximate cause, even under the undisputed facts.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo and apply the same standards as the district court. *Citizens for Smart Growth v. Sec'y of Dep't of Transp.*, 669 F.3d 1203, 1210 (11th Cir. 2012). The substantive law of Florida determines the liability of the United States under the FTCA because the

6

incident in question occurred in Broward County, Florida.  *See McCorkle v. United*

*States*, 737 F.2d 957, 959 (11th Cir. 1984).

Under Florida law, four elements are necessary to sustain a negligence

claim:

> 1. A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
>
> 2. A failure on the defendant's part to conform to the standard required: a breach of the duty. . . .
>
> 3. A reasonably close causal connection between the conduct and the resulting injury. This is what is commonly known as "legal cause," or "proximate cause," and which includes the notion of cause in fact.
>
> 4. Actual loss or damage . . . .

*Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227 (Fla. 2010) (quotation and

alterations omitted).  The only elements at issue on appeal are the first and the

third—duty and proximate cause.

"[T]he question of foreseeability can be relevant both to the element of duty

(the existence of which is a question of law) and the element of proximate

causation (the existence of which is a question of fact)."  *McCain v. Fla. Power*

*Corp.*, 593 So. 2d 500, 502 (Fla. 1992).  There is a temptation "to merge the two

elements into a single hybrid 'foreseeability' analysis, or to otherwise blur the

distinctions between them."  *Id.*  But "foreseeability relates to duty and proximate

causation in different ways and to different ends."  *Id.*

7

A.  *Duty*

Duty exists as a matter of law and is "a minimal threshold legal requirement for opening the courthouse doors."  *Id.* (emphasis and footnote omitted).  "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others."  *Id.*  Florida "recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others."  *Id.* at 503.  The core of the duty element is a requirement of reasonable, general foresight.  *Id.*

"[T]rial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant."  *Id.*  Further, the defendant is not required to anticipate the exact resulting injury for duty to exist.  *Id.* at 504.  "In applying the 'foreseeable zone of risk' test to determine the existence of a legal duty, the supreme court has focused on the likelihood that a defendant's conduct will result in the type of injury suffered by the plaintiff."  *Palm Beach-Broward Med. Imaging Ctr., Inc. v. Cont'l Grain Co.*, 715 So. 2d 343, 345 (Fla. 4th DCA 1998).  This test requires a court to evaluate "whether the type of negligent act involved in a particular case has so frequently previously resulted in the same type of injury or harm that in the field of human experience the same type of result may be expected again."  *Pinkerton-Hays Lumber Co. v. Pope*, 127 So. 2d 441, 443 (Fla. 1961) (emphases and quotations omitted).

8

Construing the facts in the light most favorable to O'Donnell, the circumstances are that Haq saw the hoses in the road and parked two tires on them. Then, when leaving, Haq backed over those hoses and pulled off in an aggressive manner, dragging the hoses under the truck. Haq saw O'Donnell pressure washing the driveway, so whether or not he knew that O'Donnell's foot was in the loop of the hose, he knew there was a person "washing" the driveway at the end of the hoses.

Haq was on notice that the pressure washing was occurring in the driveway, and he had a duty to use reasonable care under the circumstances presented. *See Miami Paper Co. v. Johnston*, 58 So. 2d 869, 871 (Fla. 1952) (providing "one manipulating a motor vehicle on the highway, whether backing, starting, or proceeding ahead, must exercise reasonable care, circumstances being the guide as to what constitutes reasonable care"). When one is driving in an aggressive manner, an injury to a person nearby is within the foreseeable zone of risk. *See Nelson v. Ziegler*, 89 So. 2d 780, 783 (Fla. 1956) (en banc) (stating "an automobile is a dangerous instrumentality and while the driver thereof is certainly not an insurer of the safety of those who project themselves into his pathway, he is charged with the responsibility of having his vehicle under control at all times, commensurate with the circumstances and the locale," and maintaining "a sharp

and attentive lookout in order to keep himself prepared to meet the exigencies of an emergency within reason and consistent with reasonable care and caution").

USPS cites *Palm Beach-Broward Medical Imaging Center, Inc.*, in support of its argument that duty is lacking.  715 So. 2d at 345.  There, the Fourth District Court of Appeal reasoned "[i]n applying the 'foreseeable zone of risk' test to determine the existence of a legal duty, the supreme court has focused on the likelihood that *a defendant's conduct* will result in *the type of injury suffered by the plaintiff*."  *Id.* (emphases added).  That court then held "the foreseeable zone of risk created by the negligent operation of a motor vehicle d[id] not include an electricity consumer some distance from the scene of an accident."  *Id.*  Here, unlike in *Palm Beach-Broward Medical Imaging*, the foreseeable zone of risk test supports legal duty—it is foreseeable that aggressive driving (the defendant's conduct) could result in personal injury (the type of injury suffered by the plaintiff) to those nearby.

Accordingly, we hold O'Donnell was within the foreseeable zone of risk and that Haq had a legal duty, under the circumstances presented, to operate his mail truck with reasonable care.  *See McCain*, 593 So. 2d at 503 ("[T]rial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant.").

10

## B. *Proximate Cause*

Proximate cause is a "more specific *factual* requirement that must be proved to win the case once the courthouse doors are open." *Id.* at 502. "The proximate causation element . . . is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *Id.* "[A] defendant might be under a legal duty of care to a specific plaintiff, but still not be liable for negligence because proximate causation cannot be proven." *Id.* at 502-03.

The proximate-causation element is more narrow; "foreseeability is concerned with the specific, narrow factual details of the case, not with the broader zone of risk the defendant created." *Id.* at 503. Harm is proximate "if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question." *Id.* However, "an injury caused by a freakish and improbable chain of events would not be 'proximate' precisely because it is unquestionably unforeseeable, even where the injury may have arisen from a zone of risk." *Id.*

The district court granted summary judgment to USPS on the ground that O'Donnell's accident was a freak one that could not support proximate cause, even under the undisputed facts. Here, however, reasonable persons could differ as to whether the facts establish proximate cause. *See id.* at 504 (explaining "where

11

reasonable persons could differ as to whether the facts establish proximate causation—i.e., whether the *specific* injury was genuinely foreseeable or merely an improbable freak—then the resolution of the issue must be left to the fact-finder"). A reasonable person could determine Haq's aggressive driving set off the chain of events that resulted in O'Donnell's injury. While the precise manner in which the injury occurred might not be expected, that Haq allegedly aggressively drove over a large pile of hoses while O'Donnell was using those hoses to pressure wash the driveway does not necessarily make this accident a "freak" one. *See id.* at 503 (stating "it is immaterial that the defendant could not foresee the *precise* manner in which the injury occurred or its *exact* extent"). Though Haq may not have known O'Donnell had placed his foot in the middle of the hose loop, reasonable minds could differ regarding whether the injury was foreseeable based on Haq's aggressive driving and knowledge that O'Donnell was pressure washing in the driveway. This is not a case where it appears to the court "highly extraordinary" that Haq's aggressive driving over the hoses could have injured the person using those hoses. *See id.* at 504 (explaining a trial court has discretion to decide proximate cause as a matter of law if, "looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that [the conduct] should have brought about the harm" (quotations omitted)). Because "reasonable

12

persons could differ as to whether the facts establish proximate causation," we remand this issue for further proceedings. *Id.*

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of summary judgment, and REMAND for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**